Massie et al. vs. Enyart.

## MASSIE ET AL. VS. ENYART.

1. FRAUDULENT CONVEYANCE: *Notice to the purchaser.*
   It is well established that a third party may, with a knowledge of the failing circumstances of a debtor, buy property of him upon a fair consideration actually paid, unless he was aware that the debtor intended by the sale to defraud his creditors.

2. ————: *Same. Pleading.*
   Knowledge by the purchaser of the fraudulent intent, or of circumstances sufficient to put him upon inquiry, before the payment of the purchase-money would defeat his title. And an answer denying knowledge should extend to the time of paying the consideration.

3. ————: *Circumstances indicating fraud and knowledge.*
   The purchase at an inadequate price by a minor son without means, who was at the time residing with his father, the grantor, a debtor generally known to be in failing circumstances, who had previously transferred other property to his other children in fraud of his creditors, held to be invalid.

APPEAL from *Washington* Circuit Court in Chancery.
Hon. J. M. PITTMAN, Circuit Judge.
*Davidson*, for appellant.
*Walker*, contra.

WALKER, J.:

The appellants, plaintiffs in the court below, filed their bill against the appellees, to set aside a deed of conveyance for a tract of land executed by John Enyart to his co-defendant, Stephen B. Enyart, which plaintiffs allege to have been made in fraud of their rights as creditors of John Enyart.

The cause was submitted to the court upon bill, answer, exhibits and depositions, and a decree rendered in favor of the defendants, from which plaintiffs have appealed.

It appears from the pleading and evidence, that John Enyart was indebted to both Massie and Gollaha for money borrowed of them. The note given to Massie was for $100.00, dated 9th of March, 1873, due 1st of September thereafter, upon which, on the 16th of December, 1874, Massie obtained judgment in a Justice's Court for the sum of $111.70, upon which execution was issued on the 16th of January, 1875, and placed in the hands of the constable. Enyart filed a schedule of his property which exempted all of it from execution, and the constable returned it no property found.

A transcript of the judgment, execution and return was filed in the Circuit Court clerk's office, upon which, on the 8th of March, 1875, execution issued directed to the sheriff and returned by him no property found.

John Enyart was also indebted to Gollaha as evidenced by two notes, one executed 30th of March, 1872, for $100.00, and the other of April 1st of that year for $50.00, upon which Gollaha, on the 26th of April, 1875, obtained judgment for $196.87, upon which execution issued on the 14th of May, 1875, placed in the hands of the proper officer to be executed, and returned no property found; on the 19th of May, 1875, a certified transcript of the judgment, execution and return was filed in the Circuit Court clerk's office, entered upon the judgment docket

of said court, an execution issued directed to the proper officer and returned no property found.

It was to subject a tract of 120 acres of land owned by John Enyart at and after the execution of said notes, that the bill of complaint was filed.

It is alleged that on the 1st of May, 1874, John Enyart and his wife conveyed by deed to his son, Stephen B. Enyart, for the alleged consideration of $300, the tract of land now sought by plaintiffs to be subjected to the payment of their judgments. That John Enyart, at the time of contracting with plaintiffs, was the legal owner of this and other tracts of land, and that at the time of making a conveyance to Stephen B. Enyart he was in failing circumstances; that the transfer was made without consideration and in fraud of their rights as creditors; that Stephen B. Enyart was a minor without means to pay for the land, and took the conveyance with a knowledge of the fraudulent intent with which it was made.

That John Enyart was in failing circumstances is abundantly shown from the evidence; besides the debt due to plaintiffs, he was indebted to Columbus Jackson, Porter Owenby and others. Owenby states that he was unable to collect his debt of Enyart, and that to his knowledge other creditors frequently called upon him for payment. He told Owenby that he owed about $6,500, had thought of taking the bankrupt act, but declined doing so; said he would pay all the debts he now contracted, whether he paid the old debts or not; that he had given some mortgages to secure their payment and intended to give some others.

Walden, his son-in-law, deposed that as early as 1871, John Enyart conversed with him about his financial affairs, in the fall of that year proposed to let witness have fifty acres of land, wanted a deed made in my wife's name, said I might select the fifty acres out of a tract of 200; that my wife was his favorite,

he would give her the land, but a gift would not stand in law when a man was in debt, and I must pay him something; the sum agreed upon was $250.00. I let him have a horse and a mule for that price, and he paid me $100, and took my wife's note for a $100, which he said she would never be called upon to pay if he had a like amount for the rest of his children.

He made a deed to my wife for the fifty acres of land, the consideration named was $100, said that consideration was as good as any other sum; the land was worth $12 per acre, said he sometimes thought of taking the bankrupt act, but it might not be right, although others had done so with him; said if his creditors knew that he was selling off his lands to his children, they might close mortgages on him.

Witness Mitchell deposed that in 1871, Enyart told him about being in debt, and that those owing him had taken the benefit of the bankrupt act; witness asked him why he did not take it, he said he did not think he could clear his oath by making his land over to his children, and then taking the benefit of the law. It was generally known in the neighborhood that Enyart was in failing circumstances.

Witness Uptigrove deposed that it was the general talk in the neighborhood that Enyart was in failing circumstances.

Witness Todd deposed that he had heard much of Enyart's circumstances, he was said to be considerably in debt, part of his land was mortgaged, his indebtedness was known and spoken of by his neighbors generally.

On the other hand, Enyart, in his answer, denies that the sale of his land to his son was in fraud of the rights of his creditors, but was a *bona fide* sale for $300.00 cash in hand paid, which was a fair consideration for the land, but all of the other witnesses depose that the land was worth $10 per acre, or $1200 for the tract at the time of the conveyance.

In his deposition Enyart deposed that his estate was worth $4,000 or $5,000 at the time the conveyance was made to his son, and that his indebtedness did not exceed $100, which is fully contradicted by other testimony.

Such is, in substance, the evidence, which we think clearly shows that John Enyart was not only in failing circumstances at the time he conveyed the land to his son Stephen, but also that he was disposing of his property in fraud of the rights of his creditors.

But in order to vitiate the sale and set it aside as fraudulent, it must also appear, that his son was apprised of the failing circumstances of his father; and of his purpose to sell his property to avoid the payment of his debts, because, if ignorant of these facts, he bought the property in good faith, and paid for it, without a knowledge of the failing circumstances of his father, and his object in conveying the property, to hinder or delay the payment of his debts, his title to the property will not be disturbed, even though it may have been the intent of the father in making the sale to defraud his creditors.

The general proposition, that one in failing circumstances may pay one creditor in preference to another, or convey to him property at its value for that purpose, is well established, and it is equally well established that a third party, not a creditor, may, with a knowledge of the failing circumstances of the debtor, buy property of him, upon a fair consideration actually paid, unless at the time of the purchase, he was aware of the fraud intended to be practiced by the debtor upon his creditors in making it.

Thus, in the case of *Christian* v. *Greenwood*, 23 Ark., 258, in which Henley, a debtor, removed his negroes from the State of Arkansas to Louisiana, to prevent them from being sold by his creditors, sold them in Louisiana to Christian, who had no agency in moving them, but was aware of the fraudulent intent

with which they were removed to Louisiana, and, after his purchase, brought them back to Arkansas. Under this state of case it was held that, although Christian paid a fair price for the negroes, he had a knowledge of the fraudulent intent of Henley and could not hold the negroes as an innocent purchaser. Mr. Justice Fairchild, who delivered the opinion of the court, said: "If Christian bought the negroes of Henley and paid the value of them without notice of Henley's fraud, his equity as a purchaser is equal to that of the creditor to have his debt paid out of Henley's property, and the legal title derived from the purchase will prevail; but if the purchaser have notice of the fraud, and deal with the vendor, and, by so doing, aid him in the participation of a fraud upon his creditors; then even if a full price is paid by him, he shall assert no claim to equitable relief."

The decision has been approved by several of our later decisions. In *Galbreath & Stewart* v. *Cook and wife*, 30 Ark., 417.

It is under this sale that we are to determine whether, conceding the fraudulent intent of John Enyart, the debtor, his son Stephen, in good faith bought the land and paid for it without notice of the failing circumstances of his father and his intent to defraud his creditors.

Complainants allege that Stephen purchased the land of his father with a knowledge of his failing circumstances, and the fraudulent intent of his father to hinder and delay his creditors in the collection of their debts; they deny all intention to defraud the creditors: say that it was a bona fide sale for the sum of $300, in hand paid, which is the value of the land.

Defendant Stephen, says he was an innocent purchaser without notice of his father's intent to defraud his creditors ( the plaintiffs). But it will be seen that this denial of notice of fraud only extends to the time when the contract was entered into in

May, and although it is stated in the answer that the consideration $300, was paid cash in hand. The evidence of all the witnesses, including this defendant, shows that there was no money or other consideration paid at that time, nor until the month of October thereafter. The answer therefore, that he was not aware of the fraudulent intent of the father, in making the conveyance at the time it was made, is not sufficient, but should have extended to the time of making the payment in October. Notice at any time before payment is sufficient to defeat the defense of innocent purchaser. *Byers & McDonald,* v. *Fowler et al.,* 12 Ark., 218; *Whiting & Stark* v. *Beebe et al.,* Ib., 552; *Duncan* v. *Johnson et al.,* 13 Ark., 190.

·But if in fact the answer had denied notice up to the time of payment, it is very questionable whether the facts disclosed by the evidence were not sufficient to charge the defendant with notice, or at least to put him upon inquiry. It is shown that he was a minor son residing in the family of his father, without property, except perhaps a horse and cow to which no value is attached by the witnesses; shortly before that time, his father had conveyed, by deed, part of the same tract to two of his sisters. The 120 acres of land which he claims to have purchased of his father for $300, is shown to have been worth $1200, no note was taken for the payment of the purchase money, nor was there any time agreed upon for making payment. His father was generally known and spoken of in the neighborhood as involved in debt, and, as transfers were made in the family, it is but a fair inference that they came to the knowledge of the defendant, and, taken in connection with the terms of sale of the land to the son, were sufficient to put him upon inquiry, in regard to which, the rule is, that such information as will put the party upon inquiry, is in equity notice of all facts of which

an inquiry suggested by such information would have led. Kerr on Fraud, 290.

.But whether sufficient to put the purchaser upon inquiry in this case or not, his failure to deny notice of the fraudulent intent of his father, not alone at the time he purchased the land, but also up to the time he paid for it, was necessary to protect him in his purchase as an innocent purchaser, because, if he had such notice át any time before paying for the land, by doing so, he made himself a participant in the fraud.

Such being the case we must hold the deed void as against the plaintiff creditors of John Enyart.

Let the decree of the court below be reversed and set aside, the cause remanded and a decree rendered, setting aside the deed of conveyance from John Enyart and his wife to the defendant, Stephen B. Enyart, and subjecting the lands so conveyed to the payment of their debts, in accordance with the prayer of the bill.