JAMES K. BURNHAM ET AL. V. JOSEPH H. DILLON, THOMAS DILLON, CHARLES L. MESSMORE, AND GEORGE W. THAYER, ASSIGNEE.

[See *post*, 359.]

*Assignment for benefit of creditors—Fraudulent preferences—Bill by general creditors—Pleading—Appointment of receiver.*

1. The objection that a bill is multifarious should be taken by demurrer, that the court may pass upon it before the expense of reference and testimony is incurred.

2. If, instead of taking this course, the defendants only by their answer reserve the privilege of making the objection at the hearing, when such expense has been incurred, and when the court is put to the trouble of a full discussion of the case, they cannot complain if the court disregards their objection, unless the nature of the case is such that justice cannot be done to the parties upon the pleadings and evidence as then presented; citing *Payne v. Avery*, 21 Mich. 538.

3. An objection that general creditors of an insolvent debtor, who has made an assignment for the benefit of his creditors, are not authorized, on the refusal of the assignee, to file a bill to set aside an alleged fraudulent chattel mortgage executed by the assignor prior to and in anticipation of the assignment, will not be regarded as fatal when raised for the first time after all of the testimony has been taken, and with all of the parties before the court who could be brought in had the bill been filed by the assignee; citing *Root v. Potter*, 59 Mich. 498, 504.

4. The contention that the fact that the assignee of the mortgage was in possession of the mortgaged property under his security, and hence the general assignee might have maintained an action at law, should bar complainants' remedy, is untenable.

5. The assignee with notice of a fraudulent chattel mortgage given in anticipation of a general assignment by the mortgagor of his property for the benefit of creditors is in no way concerned with the avails of the mortgaged property, and cannot, on appeal from the final decree made in a suit brought to set aside said mortgage, in which the appointment of a receiver by the circuit judge at chambers is confirmed, object to such

appointment as beyond the power of the circuit judge to make, no appeal having been taken therefrom.

6. How. Stat. § 8744, which provides that in case there shall be any fraud in the matter of an assignment for the benefit of creditors, or in the execution of the trust, or if the assignee shall fail to comply with any of the provisions of the assignment act, or fail to execute said trust promptly and faithfully, any person interested therein may file a bill, etc., and the court may appoint a receiver; and 3 How. Stat. § 8749, which provides that the court may, on the application of the assignee or any person interested, make all necessary and proper orders for the management and disposition of the assigned property, the recovery of all property claimed by third persons, and to prevent any fraudulent transfer or change in the property or effects of the assignor, etc.,—authorize the filing of a bill by general creditors of the assignor, in which the assignee and fraudulent mortgagee are joined as defendants, to set aside a chattel mortgage given in anticipation of the assignment and in fraud of creditors, when the assignee refuses to file such a bill. (Per MONTGOMERY, J.)

Appeal from Sanilac. (Beach, J.) Argued January 31, 1894. Decided May 22, 1894.

Bill to set aside a chattel mortgage and for the appointment of a receiver. Defendant Messmore appeals. Decree affirmed. The facts are stated in the opinion.

*Sloman & Duffie,* for complainants.

*Elbridge F. Bacon,* for appellant.

MONTGOMERY, J. The complainants filed a bill in the circuit court for the county of Sanilac, in chancery, alleging that on the 8th day of February, 1892, defendant Joseph H. Dillon was engaged in the mercantile business in Minden City, in said county, and was indebted to the complainants in the sum of $600 for goods sold and delivered to him in said business, and that proof of the claim of the complainants had been filed with the clerk of the court, as required by law; that, on said 8th day of Feb-

ruary, Joseph H. Dillon's assets did not exceed $2,000, and that his obligations for merchandise purchased within the preceding six months were more than $8,000, and that the said Dillon was on the said day, and had been for a long time previous thereto, to wit, six months, insolvent, and well known to himself to be so; that Thomas Dillon, a brother of Joseph, had for several months preceding the 8th of February been assisting him as a clerk or salesman in carrying on said business, and was familiar with his affairs; that, on the 8th day of February, Joseph H. Dillon executed a chattel mortgage to Thomas upon his stock and fixtures in the sum of $1,045.99; that Thomas Dillon knew that Joseph was insolvent; that the mortgage was without consideration, and was given for the purpose of hindering, delaying, and defrauding creditors, and was made in contemplation of the assignment hereinafter mentioned, and for the purpose of creating a preference thereunder in violation of the assignment law; that the entire stock in trade was covered by this mortgage, and would not sell for sufficient to pay the same; that on·February 10, 1892, the mortgage was assigned by Thomas Dillon to the defendant Charles L. Messmore without consideration; that Messmore, at the time he received the assignment, knew that Joseph H. Dillon was insolvent, that he contemplated making an assignment, and that the mortgage was given for fraudulent purposes, and was a preference. It was also alleged that Messmore did not pay value for the mortgage, and was not a *bona fide* purchaser.

The bill further alleged that, on February 11, Joseph H. Dillon went through the form of making an assignment for the benefit of creditors to George W. Thayer, and that the assignment was only partially perfected; that Joseph H. Dillon had other property and assets, to the amount of $2,000, which were not included in the assign-

ment, and which were withheld and secreted by said defendant Joseph H. Dillon; that the assignee, Thayer, was an intimate friend of Joseph H. Dillon, and was not disposed to take any measures on behalf of Dillon's creditors to attack the mortgage or obtain possession of the property withheld and secreted; that he had yielded up the possession of said property to Charles L. Messmore, and that the said Messmore had advertised the said property and stock for sale at public auction; that the goods were delivered to the defendant Messmore in pursuance of the fraudulent purpose stated; that Thayer knew that the mortgage given to Thomas Dillon was not a valid claim, and was fraudulent, and yet refused, as assignee, to execute his trust or prevent the sale of the property as aforesaid, or take any steps to reach and obtain the property withheld and secreted by said Dillon, or in any way contest the validity of the chattel mortgage.

The bill prayed for an injunction and the appointment of a receiver, that the mortgage in the hands of Messmore be declared fraudulent, and that the defendant Joseph H. Dillon be compelled to account for and turn over to the receiver the property withheld and secreted by him. The bill was filed by leave of the court.

The answers consisted of denials of fraud, and alleged that the mortgage was upon good consideration, and valid. Defendant Messmore further asserted that he was a *bona fide* purchaser without any notice of fraud, and that he had paid value for the mortgage.

The court granted the relief prayed in the bill, and declared the mortgage in the hands of Messmore void. Messmore alone appeals.[1]

The defendant insists that there were legal objections to the granting of the relief under the bill:

---

[1] See supplemental opinion, *post*, 359.

1. That the complainants were only general creditors of Joseph H. Dillon, without judgment or lien, and therefore not authorized to file the bill.

2. That the bill is multifarious.

3. That, inasmuch as the defendant Messmore was in possession of the goods under his mortgage, the assignee had an adequate remedy at law.

4. That the receiver was appointed by a judge at chambers, and such appointment could only be made by the court.

1. The answer to the first contention may be found in the assignment law. Section 8744, How. Stat., provides that—

"In case there shall be any fraud in the matter of said assignment or in the execution of said trust, or if the assignee shall fail to comply with any of the provisions of this act, or fail or neglect to promptly and faithfully execute said trust, any person interested therein may file his bill in the circuit court in chancery of the proper county for the enforcement of said trust, and the court, in its discretion, may appoint a receiver therein."

Section 8749, 3 How. Stat., provides that—

"The circuit court in chancery * * * may, on the application of the assignee or any person interested, make all necessary and proper orders for the management and disposition of the assigned property, * * * the recovery of all property claimed by third persons, and to prevent any fraudulent transfer or change in the property or effects of the assignor, or the allowance or payment of any unjust or fraudulent claim out of his estate."

We think these statutes give sufficient authority to maintain the bill. The creditors of the assignor, through the assignee, have acquired rights in the property assigned in the nature of a lien; and while the law confers upon the assignee the right to recover property, or equities in property, which might be recovered by any of the creditors of said assignor, the case here presented is one in which the assignee refused to perform the duty, and in which it

was necessary to invoke the aid of the court of chancery to compel him to act. For myself I can see no reason why, in such a case, the creditors may not proceed by a bill joining the assignee and fraudulent transferee. However this may be if the question be raised at the first opportunity, it will not be regarded as fatal after all the testimony has been taken, and with all the parties before the court who could be brought in had the suit been by the assignee. See *Root v. Potter*, 59 Mich. 498.

2. As to the claim of multifariousness, the language of Mr. Justice COOLEY in *Payne v. Avery*, 21 Mich. 538, is peculiarly applicable to the facts of this case:

"Where advantage of multifariousness is desired to be taken by defendants, the desirable practice is for them to present the objection by demurrer, that the court may pass upon it before expense of reference and testimony is incurred. If, instead of taking this course, they only by their answer reserve the privilege of making the objection at the hearing, when the expenses are already incurred, and when the court is put to the trouble of a full discussion of the case, they cannot complain if the court disregards their objection, unless the nature of the case is such that justice cannot be done to the parties upon the pleadings and evidence as then presented. At that stage of the case, the court, instead of the party, is to take the objection of multifariousness; and while it may refuse to render a decree upon multifarious subjects of litigation, in respect to which complete justice cannot be done, it will not, on the other hand, *sua sponte* take the objection of multifariousness, when it would be merely technical, and when the object for which the parties have incurred their expense, and for which the court has been put to the trouble of a hearing and examination, can be substantially accomplished on the record as it stands."

See, also, *Snook v. Pearsall*, 95 Mich. 534; *Wales v. Newbould*, 9 Id. 81.

3. The contention that the fact that Messmore was in possession of the goods, and hence the assignee might

have maintained an action at law, should bar complainants' remedy, is not sound. The *complainants* had no such right, and it was necessary to implead the assignee with Messmore, to bring the proper parties before the court.

4. The objection as to the appointment of a receiver is not available to the defendant. No appeal was taken from this order, and the court, by the final decree, confirmed the appointment of a receiver and the sale of the goods; and if the court was correct in determining that the mortgage was fraudulent, and that Messmore was not a *bona fide* purchaser, he is in no way concerned with the avails of the goods.

5. The testimony was taken in open court, and the record is voluminous. A review of the testimony would not be profitable; but a careful examination convinces us that the circuit judge's conclusion that the mortgage from Joseph H. Dillon to his brother was fraudulent, and made with a purpose of defeating the rights of creditors, is fully sustained. Nor are we prepared to hold that he was mistaken in finding the defendant Messmore not a good-faith purchaser, or entitled to protection to any extent whatever. The evidence shows that, when he made the purchase of the mortgage, he gave a non-negotiable memorandum of deposit for $900,—the alleged consideration; that no money was paid until some days after, when it is claimed that he paid $100, and indorsed it upon the deposit slip. But before he made this payment he was informed that the creditors claimed that the mortgage was fraudulent as to them, and proposed to attack it, and he in terms asserted the validity of the mortgage, and claimed to have purchased it in good faith. Under these circumstances, and, further, in view of the knowledge of Dillon's circumstances which he had previously had, we do not

think he is entitled to protection as a *bona fide* purchaser. The decree will be affirmed, with costs.

The other Justices concurred.