JOHN A. McFADYEN *et al.* v. H. C. MASTERS, *Sheriff.*

(Filed Feb. 11, 1899.)

1. PROPERTY — *Part Payment* — *Interest of Vendee.* Where property is sold and delivered to the vendee, and part of the purchase price is paid, and no mortgage or other lien thereon is given to secure the unpaid balance of the purchase price, the interest of the vendee in the property is not a special interest or special ownership, but he is the absolute owner of the property, and such property cannot be seized under writs of attachment against the vendor, and possession thereof retained from the vendee unless it be shown that the sale thereof was fraudulent and void as against the creditors attaching. To establish such sale as fraudulent, it must be shown that it was made with the intent and purpose on the part of the vendor to defraud creditors, and that such purpose was participated in by the vendee, or that he had notice of such purpose.

2. REPLEVIN—*Attachment—Findings.* Where, in action of replevin for a stock of goods seized by a sheriff on writs of attachment against a vendor, the issue is whether a sale of the property to the plaintiffs was fraudulent, and made for the purpose of defrauding creditors, and the jury finds for the plaintiffs, plaintiffs are entitled to a finding by the jury of the value of the property taken, and to a judgment for the full value of the property, where a return of the property to the plaintiffs is adjudged, and such return cannot be had, although the plaintiffs have not paid to the vendor the full purchase price of such property.

3. DEBTOR AND CREDITOR—*Remedy—Garnishment.* Where a sale of personal property is made in good faith, and not with a fraudulent purpose, although but a part of the purchase price has been paid, the vendor has no attachable interest in such property; and the remedy of his creditors is not by attachment against the property, but by garnishment of the debt due from the unpaid balance of the purchase price.

4. APPEAL—*Case-Made—What Must Contain.* It is not necessary that a case-made should contain all the evidence in the case, but only so much thereof as is essential to a proper presentation of the questions to be considered upon appeal.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before A. G. C. Bierer, District Judge.*

*Morgan & Pancoast,* for plaintiffs in error.

*Asp, Shartel & Cottingham,* for defendant in error.

Replevin by John A. McFadyen and Sarah Brown, partners, against H. C. Masters, sheriff of Kay county, to recover a stock of merchandise seized and held under attachments against one P. I. Brown. From a verdict and judgment for the plaintiffs, they bring error. Reversed.

Opinion of the court by

TARSNEY, J.: Prior to May 12, 1895, P. I. Brown was a merchant at Ponca City. For some weeks prior to that date Brown was in negotiation with the plaintiffs in error, looking to the sale to them of a stock of goods then owned by him at Ponca City. On said day the sale was consummated, plaintiffs in error agreeing to pay Brown therefor the sum of $4,000—$1,100 in cash, the remaining $2,900 to be paid by a conveyance to him of two quarter sections of land in Logan county. At the time the sale was consummated, plaintiffs in error paid Brown $80 cash in hand and agreed to pay the remaining $1,020, and to deliver conveyances of the land, two days thereafter. Upon the payment of the $80, and the agreement as to the payment of the balance, and for delivery of the deeds, the stock of goods was turned over to the plaintiffs in error, they taking possession thereof on May 12. On the following day the defendant in error, as sheriff of Kay county, seized said stock of goods by virtue of several writs of attachment, instituted by

creditors of P. I. Brown. On May 25, 1895, plaintiffs in
·error commenced this action of replevin to recover the
possession of said property, the same being then in the
possession of said sheriff, who claimed to hold the same
by virtue of said writs of attachment. On the trial of
the cause the jury returned the following verdict: "We
the jury impaneled and sworn to try the issue in the
above-entitled cause, do, upon our oaths, find for the
plaintiffs, and find their interest in the property in con-
troversy to be $80." Upon this verdict the court rend-
ered judgment that the plaintiffs have and recover of
and from the defendant the property described in the
plaintiffs' petition and order of replevin, and, in case
the same cannot be had, that said plaintiffs have and
recover of and from the defendant the sum of $80, the
plaintiffs' interest in said property, and costs.

Before the rendition of judgment, the plaintiffs moved
for a new trial, on the grounds, among others, of error in
the assessment of the amount of recovery, and that the
verdict was not sustained by sufficient evidence, and
was contrary to law, and errors of law occuring at the
trial, all excepted to. The motion for new trial being
overruled, and judgment having been entered upon the
verdict, the plaintiffs appealed. The errors here as-
signed are: (1) The verdict is not sustained by suffi-
cient evidence; (2) the court erred in overruling plain-
tiffs' motion for new trial; (3) the judgment is contrary
to law.

I. By section 185, Code Civ. Proc. (section 4063, p.
790, Statutes 1893,) it is provided: "In an action to
recover possession of personal property, judgment for
the plaintiff may be for the possession, or for the re-

covery of the possession, or the value thereof in case a delivery cannot be had, and of damages for the detention." To entitle a person to recover the possession of specific personal property through an action of replevin, the plaintiff must allege and establish by evidence that he is the owner of the property, or has a special ownership or interest therein; that he is entitled to the immediate possession of the property, and that the property is wrongfully detained by the defendant. (Code Civ. Proc. art. 10, sec 177.)

The gist of the action of replevin is plaintiff's right to the immediate possession of the property at the commencement of the action, by reason of his being the owner, or of his having a special ownership or interest therein. (*Olson v. Thompson*, 6 Okla. 576, 52 Pac. 388.)

In this case the plaintiffs alleged that they were the owners of the property in controversy, and entitled to the immediate possession of the same at the commencement of the action. The answer was a general denial. Under the general issue in a replevin action any facts may be shown which establish that the plaintiff at the commencement of the action was not the owner of the property (if ownership be alleged in the petition,) or had no special ownership or interest therein (if special ownership or interest be alleged,) and was not entitled to the immediate possession of the property, or that the property is not wrongfully detained by the defendant. In this action no special ownership or special interest in the property was claimed by the plaintiffs, but they alleged in their petition that they were the absolute owners thereof. The real issue to be litigated in the action was this claim of absolute ownership. The

defense was that the property never was the property of the plaintiffs; that the property was the property of P. I. Brown; that the sale from Brown to the plaintiffs was fraudulent and void, having been made with the intent and purpose of hindering, delaying, cheating, and defrauding his creditors. The plaintiffs having shown the sale and delivery to them of the goods by Brown, such sale was valid to vest in them the ownership of the property, and the right to possession against all the world except the creditors of said Brown, and against them, unless such sale was fraudulent upon the part of Brown; and that the fraudulent intent and purpose of Brown was participated in by the plaintiffs, or that they had knowledge of such intent and purpose. The sale having been shown, unless it was thus fraudulent, the plaintiffs were entitled to recover. If it was fraudulent, then the defendant had a right to recover by showing valid writs of attachment, based upon indebtedness due to the plaintiffs in the attachment proceedings. This issue was submitted to the Jury. Upon this issue they found for the plaintiffs. The judgment of the court was a judgment on this issue for the plaintiffs. It adjudges a return of the property to the plaintiffs if a return can be had. This judgment could not have been made except upon a verdict and finding that the sale from Brown to plaintiffs was not fraudulent. It could only be predicated upon a verdict and finding that the sale from Brown to the plaintiffs was in good faith, and valid to convey to the plaintiffs the ownership of the property, with a right to its possession. The evidence abundantly supports such verdict and finding, and, if it did not, it being conflicting thereon, we

could not go behind the verdict to weigh its sufficiency. We must therefore assume that the sale from Brown to the plaintiffs was valid. The defendant could not justify the taking of the property under the writs of attachment unless the sale from Brown to the plaintiffs was fraudulent and invalid. The finding of the jury for the plaintiffs was a finding that the property was wrongfully taken and wrongfully withheld by the defendant, and the judgment was to the same effect. The uncontroverted evidence was that the property so taken and withheld was of the value of $4,000. Return thereof could not be had, for the reason that it had been sold by the defendant under an order in the attachment proceedings under which it was seized. The statute is clear and positive in its direction that where, in replevin, the judgement is for the plaintiff for the return and delivery to him of the property in controversy, and the return thereof cannot be had, the judgment shall be for the value thereof, and for damages for its detention. (Code Civ. Proc. sec. 185.)

The verdict was not clearly responsive to the issues. It did not find the value of the property taken by the defendant from the plaintiffs in terms. It finds for the plaintiffs upon the issues, and then finds that plaintiffs' interest in the property in controversy was $80. As no question of special ownership was involved, this finding of the jury was treated by the court as a finding of the value of the property taken, but there was no evidence to support such finding. The uncontradicted evidence clearly established the fact that the property was of the value of $4,000. The theory upon which the finding of the jury and the judgment of the court as to a special ownership or a special interest of the plaintiffs in the

property must have been predicated was that, as plaintiffs had only paid $80 to Brown upon the purchase, and that as, after the attachments were run, with the consent of Brown, the balance of the money which was to have been paid him, and the deeds to the land which were to have been delivered to him, were, by the plaintiffs, hypothecated with third parties to indemnify them as sureties upon the replevin bond in this case, and as only $80 of the purchase price of the goods had actually been paid to Brown, plaintiffs' interest in the goods extended only to the amount actually paid. This theory cannot be upheld. The sale having actually been consummated by part payment and by actual delivery, Brown could not have recovered possession of the goods, though the balance were never paid, without a rescinding of the sale; and strangers or creditors of Brown could not rescind it. It is not essential to a complete sale and transfer of ownership of property that the purchase price shall be paid. The sale not being fraudulent, if Brown's creditors had any relief in the premises it was by garnishment, and not by a seizure of the property. The interest of a purchaser in property purchased and delivered, where part only of the purchase price has been paid, is not a special interest to the extent of such payment, but is absolute ownership, unless the unpaid portion of the purchase price is made a lien upon the property. Such unpaid balance of the purchase price is but a debt due the vendor, and cannot be reached by his creditors by seizing the property by attachment, but can only be reached by garnishment.

The case of *Bush v. Collins*, 35 Kan. 535, 11 Pac. 425, cited by counsel for defendant in error, is not in conflict herewith. That was an entirely different case. There

the sale was found to have been fraudulently made.    The law of the case, as stated in the syllabus is that: "Where an insolvent and failing merchant makes a sale of all of his goods and merchandise for the purpose of defrauding his creditors, no one but a purchaser for a valuable consideration, actually passed before notice of the fraud, can, as against attaching creditors, claim title to the property which has been fraudulently disposed of."    It was therein held that where a party purchased from an insolvent and failing merchant a stock of goods, and the merchant makes such sale with the purpose of defrauding his creditors, and the purchaser thereof has no actual or constructive notice of the fraud at the time of the purchase, but subsequently, and before the payment of all the consideration of his purchase, has actual notice thereof, he can only be protected to the extent of the money actually paid, or the security or property actually appropriated by way of payment, before notice.   If notice is after payment of a part of the purchase money, the purchaser is only entitled to reimbursement for the money paid, or the security or property actually appropriated by the seller as payment.    He is not to be regarded as a purchaser for a valuable consideration as to the purchase money not paid.    Conceding that to be a correct statement of the law as applied to that case, it has no application to the case at bar.    The sale from Brown to plaintiffs was not found to have been made for the purpose of defrauding his creditors.    Consequently no notice that the sale was fraudulent was brought home to the plaintiffs, either before or after they made partial payment for the property.

The case of *Lytle v. Lansing*, 147 U. S. 59, 13 Sup. Ct. 254, has still less application.    That was a proceeding in

equity by the town of Lansing, N. Y., for the purpose of obtaining the annulment and cancellation of certain bonds, compelling the defendant, Lytle, to deliver them up for cancellation, and also enjoining him from transferring them pending the suit. It was there held that the bonds in question, though good upon their face, were undoubtedly void as between the railroad company, to whom they were issued, and the town of Lansing; and that it was incumbent upon the defendant, Lytle, to show that he, or some one through whom he obtained title to them, was a *bona fide* purchaser for a valuable consideration. But it is not therein held that, if the bonds in question were valid, and not fraudulently issued, Lytle's interest therein would be measured by the amount he had actually paid upon the purchase price thereof. The verdict of the jury in this case was not responsive to the issues involved, and did not find the value of the property taken, as required by law. It was erroneous in the assessment of the amount of recovery, the amount found not being supported by any evidence in the case. The judgment is erroneous in not awarding to the plaintiffs the full value of the property found to have been wrongfully taken, when judgment for return thereof was awarded, and such return could not be had. The motion for a new trial should have been sustained, or, the jury having found that the property had been wrongfully taken, and that the plaintiffs were entitled to a return thereof, the court should have entered judgment for the full amount of the value of the property taken, in accordance with the uncontradicted evidence in the case, notwithstanding the verdict.

II.   The objection of counsel for defendant in error against this court entertaining this appeal because the

case-made does not contain all the evidence cannot be sustained. It is not necessary that a case-made should contain all the evidence in the case, but only so much thereof as has relation to the questions to be considered upon review. The only evidence which it is claimed is omitted from this case-made is "Exhibit A," being a schedule of the property in question, which is attached to plaintiffs' petition, and "Exhibit B," introduced in evidence, being a contract between Brown and the plaintiffs as to the hypothecation of the moneys and title deeds with a third party as indemnity to such third party for becoming surety upon the replevin bond. There was no dispute or controversy, nor is there any question here as to the description of the property sought to be replevied; and, the contract relating to the unpaid portion of the purchase price of the goods not being material, neither of these exhibits could have any bearing upon any question presented for consideration here.

The question of the *bona fides* of the sale from Brown to the plaintiffs has been twice litigated and twice sustained, and it is time this vexatious and destructive litigation should end. In *Tootle v Brown*, 4 Okla. 612, 46 Pac. 550, we affirmed the judgment of the district court of Kay county dissolving the very attachment under which the defendant in this case seized the goods, and one of the attachments under which he in this action seeks to justify the seizure and detention of the goods in question. In that case the question was whether the sale of this property by Brown to the plaintiffs was made with the intent and purpose to defraud his creditors, and whether such sale was therefore fraudulent and void. Upon all the evidence presented, the court found that the affidavit upon which the attachment was based alleging such sale to be

fraudulent was untrue, and dissolved the attachment, and that order was by us affirmed. The judgment herein is reversed in part, and the cause remanded to the court below for a new trial upon the sole questions of the assessment of the value of the property taken and of the damages for its detention. The judgment and verdict as to the owneship of the property and the plaintiffs' right to recover the same is approved, and is not to be disturbed upon new trial. Judgment reversed, and new trial ordered.

All of the Justices concurring.