JOHN A. McFADYEN AND SARAH BROWN V. H. C. MASTERS,

*Sheriff of Kay County.*

(Filed July 6, 1901.)

1. **JUDGMENT—Not Disturbed, When—Instructions.** Where a cause has been tried to a jury, and the case-made and the record does not contain the instructions, the appellate court will presume that the trial court gave to the jury the law as applicable to the issues and evidence submitted, and if there is any state of facts reasonably deducible from the evidence introduced, which under any theory of law applicable to the issues and facts will authorize the verdict and judgment, the judgment will not be disturbed.

2. **FRAUDULENT SALE—Who may Claim Title to Property.** Where an insolvent and failing merchant makes a sale of his property for the purpose of hindering or delaying his creditors, no one but a purchaser for a valuable consideration, passed before notice of the fraud, can, as against attaching creditors, claim title to the property which has been fraudulently disposed of.

3. **FRAUDULENT SALE—Innocent Purchaser.** Where a party purchases from an insolvent and failing merchant a stock of goods, and the merchant makes such sale with intent to hinder or delay his creditors, and the purchaser thereof has no actual or constructive notice of the fraud at the time of the purchase, but subsequently and before the payment of all the consideration of his purchase, has notice thereof, he can only be protected to the extent of the money actually paid or the security or property actually appropriated by way of payment before notice. If notice of the fraud is after the payment of part of the purchase money, the purchaser is only entitled to indemnity or reimbursement for the money paid or the security or property actually appropriated by the seller as payment. He is not to be regarded as a purchaser for a valuable consideration as to the purchase money unpaid.

4. **REPLEVIN, ACTION IN.** The statutory action of replevin is sufficiently flexible to authorize a settlement of all the equities in the property in controversy as between the parties to the action.

5. **FRAUDULENT SALE—Innocent Purchaser—Recovery of Purchase Money.** Where a failing merchant has sold his property for the purpose of hindering or delaying his creditors, and the purchaser

receives notice of such fraud when only a portion of the purchase money has been paid, and before further payment, the creditors of the seller seize the property on attachment, and the purchaser replevins the property from the officer, who gives bond and retains possession, the judgment should be for a return of the property to the purchaser, or that he recover the amount that he paid on the purchase price prior to any notice of the fraud of the vendor. He is not entitled to the entire value unless it is less than the amount he actually paid before notice.

**6. FORMER OPINION VACATED.** The former opinion in this cause, reported in 8 Okla. 174, is set aside and vacated.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before A. G. C. Bierer, Trial Judge.*

*Morgan & Pancoast,* for plaintiffs in error.

*Asp, Shartel & Cottingham,* for defendant in error.

On Rehearing.   Affirmed.

Opinion of the court by

BURFORD, C. J.:   This cause was decided in this court in February, 1899, and is reported in 8 Okla. 174; subsequently a rehearing was ordered, and the case is now before us on review.   The record discloses this state of facts:

In May, 1895, John A. McFadyen and Sarah Brown, as partners, brought an action in replevin against H. C. Masters, as sheriff of Kay County, to recover a stock of goods and merchandise which the sheriff held by virtue of certain writs of attachment, issued at the instance of certain creditors of one P. I. Brown, who was the vendor of the stock of goods.   The plaintiffs, McFadyen and Brown, contracted to purchase from P. I. Brown his stock of goods for the sum of $4000.   They were to pay him $1100 cash and convey to him certain real estate representing the balance of the pur-

chase price of the stock of merchandise. In part performance of this agreement they paid Brown $80, and took possession of the goods. Brown was insolvent and some of his creditors immediately brought suit and levied attachments upon the stock. These writs were levied and the sheriff took possession of the stock the same night that McFadyen and Brown took possession. The sheriff defended against the replevin action under these writs of attachment The contention of McFadyen and Brown was that they were *bona fide* purchasers for value without any notice of fraud on the part of their vendor. The sheriff defended upon the ground that the sale of P. I. Brown to McFadyen and Brown was fraudulent for the purpose of defeating his creditors, and that the vendees had notice of the fraud; or, if they purchased in good faith, that notice of the fraud was brought to them before they had parted with the purchase money, and therefore they could only claim remuneration for the $80 paid, as against the creditors of Brown. The case was tried to a jury and a verdict returned that McFadyen and Brown were entitled to possession, and that their interest in the goods was of the value of $80. Judgment was rendered on this verdict, and the plaintiffs appealed. Their theory is that if they were entitled to possession and a return could not be had, they were entitled to an alternative judgment for the full value of the goods, $4,000.

This court in the former opinion held to that view and ordered a reversal of the judgment, but on more careful research and deliberation came to the conclusion that a rehearing should be granted.

This cause is now before us for final determination. It was urgently contended in the original brief for defendant

in error, that the case-made is so defective and incomplete that the court cannot properly review the errors complained of, and this contention is again urged in the brief on petition for rehearing. There is considerable force in this contention. The record does not contain the instructions given by the trial court, nor does it contain all the evidence that was submitted to the jury. The case-made contains the stenographer's transcript of the testimony and also contains a statement that "this was all the evidence introduced on the trial of the cause." Notwithstanding this statement, it is apparent from this transcript that certain exhibits which it purports to contain are in fact absent. A contract was introduced in evidence by which there was some agreement to the effect that the balance of the unpaid purchase money and the deeds for the land which McFadyen and Brown were to convey to P. I. Brown, were being held in escrow until the results of the litigation between McFadyen and Brown and the creditors of P. I. Brown should be determined. Also a number of letters from P. I. Brown to some of his creditors relating to his financial condition were omitted from the record. But inasmuch as the result must be the same, in the present condition of the record, and the question involved on the merits is one which has not been passed upon by this court, we will consider the case upon the merits, in so far as the incomplete record will permit.

It is a well settled rule of practice that in order to reverse a judgment of a court of general jurisdiction, error must be made to affirmatively appear by the complaining party. The appellate court will presume that the trial court has done everything proper and necesary to have been done to support its judgment, unless the contrary affirmatively appears. And where the cause was tried to a jury, and the

instructions are omitted from the case-made and record, the appellate court will presume that the trial judge gave to the jury such instructions as were applicable to the issues and the evidence, and if there is any state of facts deducible from the evidence, applicable to the issues, which under any theory of the law will sustain the verdict and judgment, such judgment will not be disturbed.

This was a replevin action; McFadyen and Brown alleged that they were the owners and entitled to the possession of the stock of merchandise in question; the sheriff was made the defendant; he answered by general denial. The plaintiffs showed that they had purchased the goods from one P. I. Brown, and agreed to pay therefor the sum of four thousand dollars. This consideration was to be paid part in cash, and the remainder by conveying certain real estate in Oklahoma county, to Brown. They paid $80 on the 12th of May and took possession of the goods on the evening and night of that day. They were to pay $1,020 cash, and deliver the deeds to the real estate on or about the 15th of May. The balance of this money had not been paid, or the real estate conveyed at the time of the trial. A few hours after McFadyen and Brown got possession of the goods, and before daylight the next morning, the sheriff levied several writs of attachment on the goods in favor of certain creditors of P. I. Brown, and took possession of the stock. These facts were practically uncontroverted.

The sheriff defended on behalf of the attachment creditors, and introduced evidence tending to show that P. I. Brown was largely indebted to numerous creditors; that he had asked extensions of time on some of his indebtedness; that he had transferred a portion of the goods after night,

and had executed a chattel mortgage on some other personal property during the night that the attachments were levied; that McFadyen and Brown had withheld payment of the entire consideration, except the $80 paid on the day of the transfer, and had declined to make any further payments or transfers of real estate until the attachment suits were determined. It was also shown that P. I. Brown was indebted to each of the attaching creditors, and that he was unable to pay them at the time that the attachments were issued.

The plaintiffs, McFadyen and Brown, also showed that they had paid about $180 in taxes on the goods, and had accepted an order given by P. I. Brown for $100 payable to the agent who negotiated the deal as his commission; but these payments were shown to have been made about ten days or two weeks after the attachments were levied.

Upon these facts we are informed in the brief of counsel for McFadyen and Brown, that their theory before the trial court was that McFayden and Brown were *bona fide* purchasers of the stock of goods for a valuable consideration, without any notice of P. I. Brown's financial condition or purposes, and that the jury having found that they were entitled to possession of the goods, they were as a matter of law entitled to an alternative judgment for the value of the goods.

On the other hand we are advised in the brief of counsel for the defendant, the sheriff, as the representative of the attaching creditors, that their theory was that P. I. Brown was insolvent; that he had transferred his property to McFadyen and Brown with intent to hinder and delay his creditors, and

that they had notice of his fraudulent intent, and hence the sale was void as against the attaching creditors. Or, if McFadyen and Brown had no notice of P. I. Brown's intent at the time of the purchase, they were put upon their notice by the levy of the attachments, and having only paid a small portion of the purchase price they were only entitled to be reimbursed in that sum, and as to the remainder of the stock the sale was void as against the attaching creditors, and that their interest in the goods was an amount equal to such sum as they had paid before any notice was brought to them of P. I. Brown's condition and purpose.

There was evidence before the jury tending to support either of these theories and the weight and effect of the evidence were questions for the jury. If the jury found that the transfer of P. I. Brown to McFadyen and Brown was made with the intent on the part of P. I. Brown to hinder and delay his creditors, and that McFadyen and Brown had no notice of such intent until after they had paid him the $80, and that the levying of the attachments and the other circumstances brought to their knowledge at that time, was notice to them of his fraudulent purpose, and the jury returned its verdict based upon such finding, then under our views of the law the verdict is right, and there was no error in rendering judgment on the verdict.

A case involving the identical state of facts as in this case was before the supreme court of Nebraska, *Hedrick v. Strauss, et al.* 60 N. W. 928, and it was there held:

"In order to constitute one an innocent purchaser of property sold for the purpose of defrauding the creditors of the vendor, the whole consideration must be actually paid before

the purchaser had notice of the fraudulent intent. If after part of the consideration has been paid, the purchaser receives notice of the fraud, he will only be entitled to protection to the extent of the consideration paid or parted with before notice. As to the purchase price not paid, such vendee will not be regarded as an innocent purchaser of the property."

The supreme court of Kansas, in *Bush, Sheriff v. Collins,* 35 Kan. 535, states the rule thus:

"Where a party purchases from an insolvent and failing merchant a stock of goods, and the merchant makes such sale with the purpose to defraud his creditors, and the purchaser thereof has no actual or constructive notice of the fraud at the time of his purchase, but subsequently and before the payment of all the consideration of his purchase, has actual notice thereof, he can only be protected to the extent of the money actually paid, or the security or property actually appropriated by way of payment before notice. If notice of the fraud is after payment of a part of the purchase money, the purchaser is only entitled to reimbursement for the money paid or the security or property actually appropriated by the seller as payment. He is not to be regarded as a purchaser for a valuable consideration as to the purchase money not paid."

In *Tilman v. Heller,* 14 S. W. 700, the supreme court of Texas held that the vendee can only be protected to the extent of the money actually paid at the time he received notice of the fraudulent intent of the vendor.

The supreme court of Michigan, in *Dixon v. Hill,* 5 Mich. 408, said:

"No one but a purchaser for a valuable consideration

can claim title to property which has been fraudulently assigned, against the action of attaching creditors. Such purchasers are protected upon the equitable principle that they should not be deprived of that which they have honestly and without notice of any fraud, bought and paid for in fair dealing with the person holding the legal title. But the consideration must in all cases be actually passed before notice. Unless payment has been actually made in some shape, the authorities are quite clear that the purchase will not be upheld. In equity, a purchaser is protected to the extent of the payments actually made, and no further, even where future payments are provided for, unless those are secured in such a manner that the purchaser cannot be relieved against them."

The foregoing was quoted and approved by the supreme court of Missouri in *Arnholt v. Hartwig,* 73 Mo. 485. The same principle is announced in *Doughtery v. Cooper,* 77 Mo. 528, in which case it is also held that the purchaser who paid a portion of the purchase money before notice of the fraud of his vendor, may be indemnified in the statutory action of replevin.

The following additional authorities support the general doctrine that in order to constitute one a *bona fide* purchaser for value, without notice of fraud of the vendor, the purchase money must be actually paid before notice, or the consideration must have actually passed to the vendor, so that the vendee cannot protect himself: *Rhodes v. Green,* 36 Ind. 10; *Dugan v. Vallier,* 3 Blackf. 245; *Parkinson v. Hanna,* 7 Blackf. 81; *Minor v. Willoughby,* 3 Minn. 239; *Jewett v. Palmor,* 7 John. Ch. 67; *Mossie v. Enquart,* 32 Ark. 251; *Burnham v. Dillon,* 100 Mich. 352.

There was evidence before the jury in the case under consideration which warranted the application of the rule

of law deduced from the foregoing authorities. And it was the duty of the trial court to have instructed the jury, that if they should find that P. I. Brown sold the goods to Mc-Fadyen and Brown with the intent to hinder and delay his creditors, and that McFadyen and Brown had no notice of such fraudulent design when they purchased and took possession of the goods, and that they paid $80 on said purchase price, and before making any further payments, they received notice of the fraud intended by P. I. Brown, then they were not innocent purchasers for value, and that they would be entitled to be indemnified or reimbursed to the extent of the $80 paid before notice, and that they would in such event be authorized to return a verdict for McFadyen and Brown for the return of the goods, or that they recover the sum of $80, the value of their interest in the stock.

The instructions not being in the record, we will presume that the court did so instruct the jury, and that the verdict returned was in harmony with such instructions.

Great latitude is allowed in actions of replevin, and the statutory action is considered sufficiently flexible to authorize both legal and equitable rights to be determined in such actions, and it is the policy of the code to, in so far as possible, settle all the equities in the property which is the subject of the controversy, in one action.

The former opinion and judgment in this cause, reversing the judgment of the district court, and reported in 8 Okla. 174, is set aside and vacated.

The judgment of the district court of Kay county is affirmed.

All of the Justices concurring.