## GRAVES v. MAYBERRY.

No. 19171. Opinion Filed July 2, 1929.

Davis & McCabe, for plaintiff in error.

Champion, Champion & Fischl, for defendant in error.

DIFFENDAFFER, C. Defendant in error was plaintiff below, and will be herein referred to as plaintiff. Plaintiff in error was defendant below, and will be herein referred to as defendant.

This is an action in replevin brought by plaintiff to recover the possession of certain personal property, consisting of tools, appliances, and supplies used in conducting a battery station, together with certain buildings used in connection therewith, located on lots belonging to the city of Wilson, and one Ford touring car.

Plaintiff sold the battery station to defendants, R. O. Graves and Charley Johnson, for which they agreed to pay him $2000. On or about January 27, 1926, the defendants executed and delivered to plaintiff 20 notes for $75 each and one note for $100, representing $1,600 of the purchase price of the battery station and business, and executed and delivered to him the chattel mortgage covering the property for the purpose of securing the notes. The first note became due February 27, 1926, and one note became due on the 27th day of each succeeding month, the last one being due on October 27, 1927.

This action was commenced on the 12th day of July, 1927, plaintiff claiming that the notes which fell due May 27th and June 27th had not been paid, and that by virtue of an accelerating clause in the mortgage all the notes thereby became due.

The mortgage provided that upon payment of the first four notes the Ford touring car should be released from the mortgage. Defendant Graves gave a redelivery bond and the property taken under the writ of replevin was returned to him. Defendant R. O. Graves answered by general denial, and further alleged that after the execution of the notes and mortgage he had purchased all the interest of defendant Johnson and that he was the owner and in possession of the property at the time the action was commenced. He pleaded fraud on the part of

plaintiff in making the trade, in that plaintiff had represented that there was no outstanding indebtedness against the business, which had been and was conducted in the trade name of the Exide Battery Station, whereas in truth and in fact plaintiff was indebted to divers persons for materials, supplies, etc., at the time of the sale, and that immediately after defendant went into possession several creditors presented claims and threatened to attach the property upon the grounds that plaintiff had sold to defendants in violation of the Bulk Sales Law, and on account thereof he was compelled to pay or arrange to pay some $500 to claimants for debts existing against said business at the time of the sale.

He pleaded further fraud, in that plaintiff had represented to defendants at the time of the sale that he had a lease from the city of Wilson on the lots upon which the buildings were located for one year and as long thereafter as they wanted it, when in truth and in fact the city of Wilson, through its city clerk, had, previous to the sale, notified plaintiff to remove said buildings from the lots, and that on or about December 15, 1926, he had been compelled by the city of Wilson to remove the building.

The defendant by way of counterclaim pleaded the same fraud and prayed for the cancellation of the notes and mortgage, and for the return of the difference between the sum of $650, which he alleged he had paid plaintiff, and the sum of $500, which he alleged to be the actual and reasonable value of the property as it actually existed.

He also pleaded a tender of payment of the fourth note, and prayed for $200 damages for refusal to release the chattel mortgage as to the Ford touring car.

Plaintiff replied by general denial. The cause was tried to a jury, and at the close of the evidence, the court instructed the jury to return a verdict for plaintiff for the possession of all the property except the Ford touring car, or its agreed value, $1,200, and to return a verdict in favor of defendant for the possession of the Ford touring car, or its agreed value, $175.

From a judgment based upon this verdict defendant appeals.

There are six assignments of error, but defendant presents them under two propositions.

The first proposition is that the trial court erred in refusing to permit defendant to introduce evidence tending to prove the alleged fraud and damages resulting therefrom. When defendant sought to introduce such evidence, the court sustained an objection. Thereupon defendant made the following tender of proof:

"If the witness were allowed to testify, he would testify that E. R. Mayberry, plaintiff in this case, misrepresented the following fact: That E. R. Mayberry had a lease on the lot on which the Exide Battery Station was located, from the city of Wilson for a year at least, or longer; that he acted on this representation in purchasing the place, due to the desirability of the location; that the property is located in a part of Wilson's business district and right behind the Heath Motor Company, from whom he expected to get a large amount of business."

He offered to prove by H. T. Brown, city clerk of the city of Wilson, that Mayberry had no contract with the city of Wilson to allow him to keep the lots for any length of time, and that the only understanding with Mayberry was that he could stay there as long as he paid the rent in advance at $8 per month, with the understanding that he would move any time he was given notice. He also offered to prove by this witness that he, defendant, was notified by the clerk to move off some time in 1926. The offer of the foregoing proof was denied.

The plaintiff seeks to sustain the ruling of the trial court upon the theory that defendant was seeking to rescind. In Reger v. Henry, 48 Okla. 759, 150 Pac. 722, it was held that where a purchaser has been induced by fraud of the owners to make a purchase, such purchaser may pursue one of two remedies: Rescind the contract and restore, or offer to restore the consideration, or affirm the contract and sue for damages; and in case of election to affirm and sue for damages, it is not incumbent upon such purchaser to initiate the action. He may, when sued upon a note given in connection with the transaction, recover damages for the fraud. The failure to initiate an action on account of the fraud before suit is brought upon the note, and making payment upon the note, with knowledge of the fraud, does not ratify the same or waive the right to recover damages for the fraud when sued upon the note. Such, we think, is in the position of the defendant in the instant case. The question whether or not this may be done in an action in replevin brought to obtain the possession of mortgaged property, under a mortgage given to secure such note, is not an open question in this state.. In McFayden et al. v. Masters, 11 Okla. 16, 66 Pac. 284, it was held:

"The statutory action of replevin is sufficiently flexible to authorize a settlement of

all the equities in the property in controversy as between the parties to the action."

In Broyles et ux. v. McInteer, 29 Okla. 767, 120 Pac. 283, an action very similar to the one here under consideration, it was held:

"The statutory action of replevin is sufficiently flexible to authorize both legal and equitable rights to be determined in such actions."

"It is the policy of the Code, in so far as possible, to settle all the equities in the property which is the subject of controversy in one action."

And further:

"Under general denial in replevin, the defendant may make any defense which will defeat plaintiff's claim or right to possession as against the defendant, and under the Code great liberality is allowed such defenses."

See, also, Stone v. Amer. Nat. Bk., 34 Okla. 786, 127 Pac. 393.

In Bottoms v. Clark et al., 38 Okla. 243, 132 Pac. 903, it was held:

"Where animals are taken damage feasant and are replevied by the owner, the defendant in that action may recover the damages which he has suffered by reason of the trespass, and a separate action is not necessary."

In Holmberg v. Will, 52 Okla. 745, 153 Pac. 832, it was held:

"A replevin action is primarily one for the possession of personal property; yet it is sufficiently flexible to authorize a settlement of all the equities between the parties arising from or growing out of the main controversy."

In Wilson et al. v. Rentie et al., 124 Okla. 37, 254 Pac. 64, it was held:

"In determining the existence of fraud, any evidence, direct or circumstantial, which is competent by other rules of law, and has a tendency to prove or disprove such issue, is admissible. The whole transaction involving the alleged fraud may be given in evidence."

And further:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial."

In Nickle v. Reeder, 66 Okla. 10, 106 Pac. 895, it was held:

"While ordinarily a statement upon which fraud may be predicated must be of existing fact, and not mere expression of opinion, a representation that the landlord will continue to rent a building for restaurant purposes to a purchaser of such restaurant so long as such purchaser may pay the rent in advance, when, at the time of making the representation by the seller, he has been duly served with notice to quit said premises, and has been notified by the landlord that such landlord would no longer rent said premises for restaurant purposes, such representation being relied upon and acted upon by the purchaser, and being shown to be a material inducement for the purchase of said restaurant, amounts to actionable fraud."

Defendant had given a redelivery bond, thus calling for a verdict fixing the value of plaintiff's special interest in the property in case a verdict should be found for plaintiff. In this, we think the case differs from Remington Typewriter Co. v. Rutherford, 56 Okla. 291, 156 Pac. 166. It was there held:

"Evidence of a breach of an implied warranty of fitness in a machine to do the work for which it was intended, without evidence of damage resulting therefrom in an amount equal to or in excess of the unpaid installments due upon a conditional sale contract, constitutes no defense to an action of replevin brought by the vendor."

There the sole question was the right of possession of the property. Defendant had given no redelivery bond and damages were not proved in an amount equal to the special interest of plaintiff in the property. Here defendant has given a redelivery bond, and it is necessary to show the value of plaintiff's special interest in the property in order to fix the amount of the alternative judgment in case of a verdict in plaintiff's favor. Defendant may or may not prove damages in an amount equal to the claim of plaintiff. If he should do so, it would extinguish plaintiff's claim and defeat his right to the possession of the property, and there could be no judgment in plaintiff's favor. Should defendant prove damages in any amount less than plaintiff's claim, it would not defeat plaintiff's right to recover possession of the property, but such damages as were proved would serve to reduce the value of the special interest of plaintiff, and thus reduce the amount defendant would be required to pay in lieu of returning the property.

Under the above authorities, the evidence rejected was clearly admissible and the ruling of the court excluding same was error.

Defendant under his next proposition contends that the court erred in directing a verdict for plaintiff, in that the evidence of defendant showed that he had paid plaintiff and others at plaintiff's direction more than the amount due on the first five notes, and for that reason there was nothing due plaintiff at the time suit was commenced.

With this contention, we are unable to agree. Defendant did testify that after he and Johnson bought the property there was some $396 in claims presented against the Exide Battery Company. He testified in one place that he paid all these claims, but when pressed to just how much he had paid, he testified:

"A. I paid it—commenced and paid the first one in the month that I got the place. Q. How much did you pay them then? A. Seventy-five dollars."

And:

"Q. All right. Now, when did you make the next payment to Harris and Smith Company? A. In the next 30 days. Q. Paid them the second note? A. Yes, sir. Q When did you make the next payment? A. Thirty days afterwards. Q. That by check? A. I did. Q. And Mr. Mayberry brought you the notes each time you paid the Harris and Smith Company, did he? A. He did. Q. When did you make the next payment? A. Thirty days afterward. Q. That was when the fourth note was due? A. It was due, but it wasn't paid. Q. Why wasn't it paid? A. Well, because I didn't have the money to pay it right at the time. Q. You didn't pay the fourth note, and didn't pay the fifth note when it became due? A. No, sir. Q. And you haven't paid out any money since the fourth note was due, have you? A. Not on them. Q. Or anything else. You haven't paid a dime of this indebtedness since the fourth note was due, have you? A. No, sir. Q. You still owe the fifth note? A. Yes, sir. Q. And you owe all the rest of them, ain't that right, Mr. Graves? A. Yes, sir."

He testified, however, that he offered to pay the fourth note, but plaintiff refused to accept payment. This evidence was not controverted, and it was upon this that the court directed a verdict for defendant for the possession of the Ford touring car, upon the ground that the mortgage provided for the release of the car upon payment of the first four notes. But from defendant's own evidence, it clearly appears that the fifth note was due and unpaid at the time the suit was commenced.

The judgment for defendant for the possession of the Ford touring car should be affirmed, and that part of the judgment in favor of plaintiff for the possession of the other property, or its agreed value, $1,200, should be reversed and remanded for a new trial.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 23 R. C. L. p. 854; 7 R. C. L. Supp. p. 786. (2) 12 R. C. L. p. 436; 2 R. C. L. Supp. p. 1427; 5 R. C. L. Supp. p. 644; 6 R. C. L. Supp. p. 708. See "Bills and Notes," 8 C. J. §1365, p. 1057, n. 99. "Fraud," 27 C. J. §181, p. 50, n. 23. "Replevin," 34 Cyc. p. 1354, n. 12; p. 1517, n. 39.