## WIGGINS v. JACKSON.

No. 1267.   Opinion Filed January 9, 1912.

(121 Pac. 662.)

1. **SALES—Breach of Warranty—Damages.** A purchaser of a team of horses, at the time of the purchase in the month of February, stated to the seller that he desired the horses with which to cultivate a crop on 70 acres of land. The seller represented and warranted the horses to be sound and in good health, and capable of rendering the services for which they were desired. The horses were unsound, diseased, and without value, because of which the purchaser was unable to plant and cultivate 30 acres of his land. There was no allegation that other horses with which to cultivate the land could not be had upon the market, or if they could be had that the purchaser was unable to buy them; and that such facts were within the knowledge of the seller. **Held,** that the profits the purchaser would have realized from the cultivation of said land in a crop of cotton are not recoverable as damages resulting from a breach of the seller's warranty, because same are remote, speculative, uncertain, and not within the contemplation of the parties at the time of the sale. **Held,** also, that the price contracted by the purchaser to be paid by him as rents on said land constitutes no element of his damages nor a proper measure thereof.

2. **SAME—Breach of Warranty—Damages.** As a general rule, the measure of damages recoverable for breach of warranty of personal property is the difference in value the property sold would have had at the time of the sale, if it had been sound or as warranted, and its actual value with the defects constituting the breach of warranty.

(Syllabus by the Court.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by C. E. Wiggins against W. H. Jackson. Judgment for defendant, and ·plaintiff brings error. Reversed and remanded.

*Guy H. Sigler,* for plaintiff in error.

*L. G. Shelton* and *I. R. Mason,* for defendant in error.

HAYES, J. Plaintiff in error, hereinafter designated plaintiff, filed originally this suit in replevin before the admission of the state in the United States District Court for the Southern District of the Indian Territory at Ardmore, in which he sought to replevy certain personal property described in his petition, to which he claimed the title by virtue of a certain chattel mortgage, executed by defendant in error, hereinafter designated defendant, to secure the payment of one certain promissory note for the sum of $388.85, dated the 7th day of February, 1907, payable to plaintiff and executed by defendant, which plaintiff alleges is past due and unpaid.

Defendant, by his amended answer, admits the execution of the note and mortgage mentioned in plaintiff's petition, and alleges that the consideration for which said note was executed was: First, $50 worth of supplies, to be furnished by plaintiff to him, and that same, except in the amount of $9.55 worth had never been furnished by plaintiff or received by defendant, and he tendered into court the sum of $9.55, as payment for the supplies received; second, $35 in money, advanced by plaintiff to him, on which he alleges plaintiff charged a usurious rate of interest, rendering the same void under the statute in force in the Indian Territory at the time of the execution of the note and mortgage; and, third, that $275 represented by the note was for the purchase price of a pair of horses, sold by plaintiff to defendant. He alleges that plaintiff represented to him that the two horses, the purchase price of which formed a part of the consideration of the note, were sound and serviceable; that he stated to plaintiff that said horses were required by him for the purpose of cultivating a crop of 70 acres during the year 1907; and that plaintiff guaranteed them to be sound and in good health and con-

dition and fully able to do and perform the services required. He then alleges that one of the said horses was, at the time of the sale, afflicted with the heaves and other diseases, from which he shortly thereafter died; and that the other horse, although still alive, is and was at that time diseased and crippled in the shoulders and otherwise unfit to work or to perform the services for which defendant bought him; that he (defendant) has been at all times ready and willing and offers to return said horse, which he alleges to be without value. He thereupon makes the following allegations:

"Third. Defendant says that, during the year 1907, he rented 70 acres of land to be cultivated by him in crops of corn and cotton; that on account of the diseased condition of the horses set forth herein, and after due diligence on the part of this defendant, he was able to cultivate but 40 acres of said land, although under his rental contract he was compelled to pay rent on the 70 acres; that upon 25 acres of cotton he cultivated, raised, gathered, and marketed nine bales of cotton, of the market value of $50 each. He alleges and says that the 30 acres of land, uncultivated for the reasons set out hereinbefore, were of equal quality to that he did cultivate; and that he verily believes that he would have raised thereon at least ten bales of cotton; that he was compelled to pay rental upon the said 30 acres of land in the sum of $75; and that, had he been able to cultivate the 30 acres for cotton, same would have netted him at least the sum of $5 per acre, or a sum of $150; defendant therefore says that he was damaged by this plaintiff by his false and fraudulent acts and representations, and by the items set forth above, in the sum of $225; and that he verily believes that plaintiff should take nothing by his action, but that he should recover over and against the plaintiff judgment in the sum of $225 as damages for the failure of the said plaintiff to do and perform what he in law and equity should have done."

He then prays that plaintiff take nothing by his action, but that he have and recover from plaintiff the sum of $225 as his damages, and that he have judgment for his costs expended.

To this answer, plaintiff filed a general and special demurrer. The special demurrer is directed against the foregoing paragraph of the answer. The court overruled the demurrers and the cause was tried to a jury, resulting in a verdict and judgment in favor

of defendant for the sum of $75. Defendant was permitted, over objection of plaintiff,. to introduce evidence tending to show that he had leased, for the year 1907, 70 acres of land, to be cultivated by him in crops of corn and cotton, as alleged in the third paragraph of his amended answer, for which he was to pay and did pay the sum of $2.50 per acre; and that, on account of the diseased and worthless condition of said horses, he was unable to cultivate 30 acres of the land; and that, had he been able to cultivate it in cotton as he had other portions of the land, he would have raised sufficient crops thereon to have realized a profit of $5 per acre on the 30 acres he was unable to cultivate. Upon this issue, the court gave the following instruction:

"Believing from preponderance of the evidence these facts that I have just stated to you—that is, that the guarantee was given as alleged and that the horses were diseased as alleged— if you further believe that the plaintiff guaranteed them to cultivate 70 acres of land, and that he had to let 30 acres lay out uncultivated; and that he made known to the plaintiff at the time he wanted a team that would cultivate 70 acres of land, and the plaintiff guaranteed this to the defendant; and that they would cultivate it—were able to do it—able to cultivate 70 acres of land; and that the horses could not do this by reason of their diseased and unsound condition; further that the defendant had to pay $2.50 per acre for the 30 acres he was unable to cultivate by reason of the premises I have stated, then, in that respect, you will find for the defendant such damages for the 30 acres at $2.50 per acre as you may think he expended for rental of that land which was under the circumstances stated."

Defendant's right in a replevin action to set up his counterclaim for damages and recover judgment therefor in a sum in excess of the amount necessary to liquidate or offset his note, has not been questioned either in the trial court or in this court, and both parties have proceeded upon the theory that defendant may recover in this proceeding judgment for such damages caused by the breach of warranty as he may be entitled to; and we shall dispose of the case upon that theory, without deciding the correctness of it, if its correctness had been timely challenged.

The overruling of the special demurrer to the third paragraph of defendant's answer, the admission of testimony tending

to establish the profits defendant would have realized from the cultivation and growing of the crops on the land he was unable to cultivate, and the giving of the foregoing instruction, constitute the principal assignments of error urged for reversal of the cause, and they present so nearly the same question that it will not be necessary to consider them separately.

That the portion of the petition alleging the anticipated profits defendant would have realized from the 30 acres of cotton, had the horses been sound and otherwise as warranted so he could have planted, cultivated, and gathered said crop, states no cause of action, and that all the evidence to establish such profits as an element of defendant's damages was improperly admitted, we think it plain. The fundamental principle of law underlying the right of the injured party to recover for damages suffered from a breach of a contract is that he shall recover such damage as was within the contemplation of the parties to the contract at the time of its execution. A damage that arises in the natural course of things from the breach of a contract and as a proximate result thereof is presumed to have been within the contemplation of the parties. A damage that does not follow the breach in the natural course of things, and is not proximate is not recoverable, unless the circumstances surrounding the transaction or agreement within the knowledge of the parties were such that it may be reasonably supposed that such damages were, when the contract was made, within the contemplation of the parties as a probable result of the breach. Remote, contingent, uncertain, and speculative damages are not recoverable, not only because they are difficult of ascertainment with certainty and satisfaction, but because they are not within the contemplation of the parties and do not enter into the agreement.

In *Hadley v. Baxendale,* 9 Exch. 341, the leading English case upon this question, often cited and approved by the courts of this country, the principle involved is stated as follows:

"When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of con-

tract itself or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant and thus known to both parties, the damage resulting from the breach of such a contract, which they would naturally contemplate, would be the amount of injury which would ordinarily follow from the breach of contract, under these special circumstances, so known and communicated."

"Profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case, where such profits are not open to the objection of uncertainty, or remoteness, or where by express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably assumed that they were within the intent and mutual understanding of both parties at the time it was entered into." (*Howard v. Stilwell & Bierce Mfg. Co.,* 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147.)

The almost universally recognized rule for determining the measure of damages, in an action brought on a warranty that has been broken, is that the true measure of damages for which the delinquent party is liable is the difference between the value which the thing sold would have had at the time of the sale, if it had been sound or as warranted, and its actual value with the defects constituting the breach of the warranty. Section 762, Sedgwick on Damages.

"Where the contract relates to commodities commonly purchaseable in the market, the purchaser is made whole when he recovers the difference between the contract price and the value of the article in the market at the time and place of delivery, because he can supply himself with this article by going into the market and making his purchase at such price, and these are all the damages he is ordinarily entitled to recover; for nothing beyond this was in the contemplation of the parties when they contracted." (Section 51, vol. 1, Sutherland on Damages.)

The natural and proximate damages resulting from the breach of plaintiff's warranty, assuming the horses to have been worthless as alleged, and there is evidence tending to prove such allegations, are the loss to the defendant of the value of the horses

in the condition warranted by plaintiff when sold to defendant. This damage was within the contemplation of plaintiff and defendant; but the alleged consequential damage resulting from the loss of profits from a crop not planted that are uncertain in amount, and that in fact, so far as the parties could anticipate at the time of the sale, might result when planted in a loss instead of a profit, was not within their contemplation. The sale was made in the month of February, approximately three months before cotton planting season. Nothing could be more uncertain and speculative in character than the prospective profits of a cotton crop at that time of the year to be planted in this climate. It is well known that such crop is greatly affected by the varying weather and uncertain seasons of this climate and is subject, until matured, to be destroyed or damaged by insects, and, after it is matured, to the varying price of a fluctuating market. In order for notice or knowledge that defendant desired or intended to use these horses in cultivating a crop to render plaintiff liable for the consequential loss of profits of the crop, the notice or knowledge must have been of such a nature that the contract was to some extent based upon that special circumstance. Section 159, Sedgwick on Damages. In support of this principle, the foregoing author quotes from the opinion in *British Columbia S. M. Co. v. Nettleship,* L. R. 3 C. P. 499, the following:

"The mere fact of knowledge cannot increase the liability. The knowledge must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it."

The instant case is an ordinary sale of two horses warranted to be sound and in good health. It is true that defendant stated to plaintiff that he desired them with which to cultivate a crop of 70 acres, but it is not alleged that this purpose for which they were to be used required any special qualities other than that they be sound and in good health, or that they were recommended as capable of rendering such service upon any other reason than because they were in a sound and healthful condition. The parties never contemplated at the time of the sale, three months before

cotton planting time, the crop conditions of the coming cotton season, the cost of raising a crop during such season, varying as it would with the character of the season, the probable yield, and the unfavorable conditions of the market. Nor would two persons, acting under similar circumstances, as a general rule, contemplate such conditions. *Callahan & Company v. Chickasha Cotton Oil Company*, 17 Okla. 544, 87 Pac. 331, is so nearly analogous to the case at bar as to be decisive of the question here considered. In that case the vendor contracted to furnish to the vendee certain machinery for an oilmill and to deliver same by the latter part of the month of July, so the machinery could be installed in time for the approaching cotton season. The machinery was not delivered until September, and, because of the delay, the mill was forced to stand idle from September 15 to the 1st day of November. To establish his damages, the vendee sought to show the rental value of the mill during the time it was idle by introducing evidence as to profits the mill might have made with a satisfactory market for the purchase of supplies and sales of products; but such evidence was held incompetent because remote, based upon speculation and not capable of sufficient and certain ascertainment. Nor is the amount paid by defendant under the contract as rents on the land a proper element of damages. There is no causal connection between the sale contract or the breach thereof and the rental contract and the amount agreed to be paid under it as rents. It is not alleged that plaintiff had any notice of the rental contract at the time of the sale or of the amount of rents defendant would be required to pay thereunder. If other horses with which to plant and cultivate the crop of cotton were not obtainable upon the market where this sale occurred, or if obtainable and defendant was not for some reason able to purchase them, and plaintiff had notice of these facts at the time of the sale, then the loss of the use of the land would, under these circumstances, which are not alleged in defendant's cross-complaint, have been within the contemplation of the parties as a probable result of a breach of the warranty; but, in that event, the measure of damages would be the usable or rental value of the land for the year it lay idle, and not

what defendant had contracted to pay for it; for his loss because of the breach of warranty would be not what he had contracted to pay for the use of the land, for that he would have to pay anyway, but that which he actually lost, to wit, the use of the land.

For the error in overruling the demurrer to the third paragraph of defendant's answer and cross-complaint, and for the admission of evidence in support of the allegations therein contained, the judgment of the trial court is reversed, and the cause remanded.

TURNER, C. J., and KANE and WILLIAMS, JJ., concur; DUNN, J., absent, and not participating.