**FIRST NAT. BANK of HEAVENER v. KEMPNER et al., Trustees.**

No. 14042—Opinion Filed Oct. 14, 1924.

**1. Principal and Agent—Contract by Agent —Liability of Agent.**

Although an agent enters into a contract with the actual intention of binding his principal only, if his wording of the same, or the circumstances of the case are such as to bind himself, he will be personally liable thereon, notwithstanding the fact that he may have incidentally disclosed the name of his principal.

**2. Sales—Warranty—Affirmation of Facts.**

An affirmation in regard to an existing fact, distinctly and positively made in the negotiations for trade, should be regarded as a contract, and enforced as a warranty.

**3. Carriers—Forged Bills of Lading—Payment of Draft—Recovery from Payee.**

Money paid by the drawee upon a draft drawn against indorsed bills of lading which are in fact fictitious, and accepted against such bills, in ignorance of the fraud, may be recovered back from the payee.

**4. Same—Warranty by Transferrer of Bill—Statute.**

Under Acts of Congress approved August 29, 1916, section 34 (U. S. Comp. St. sec 8604qq), the person who negotiates or transfers for value a bill by indorsement or delivery, unless a contrary intention appears, warrants that the bill is genuine; that he has a legal right to transfer it; that he has knowledge of no fact which would impair the validity or worth of the bill; that he has a right to transfer the title to the goods, and the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a bill the goods represented thereby.

**5. Same—Liability of Forwarding Bank to One Paying Draft.**

Where a bank receives from a party a draft with a bill of lading attached, and the bank gives the party credit for the amount, and then indorses the bill, and sends through his usual channel to the party on whom it is drawn, and the same is paid, and the bill proves to be a forgery, said bank is liable to the person paying same for the amount paid by him.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, LeFlore County; E. F. Lester, Judge.

Action by I. H. Kempner, D. W. Kempner, R. Lee Kempner, S. E. Kempner, and J. Seinsheimer, trustees of H. Kempner, an express trust, against the First National Bank of Heavener, Okla., a corporation. Judgment for plaintiffs, and defendant brings error. Affirmed.

Grover Flanagan, J. M. Dickerson, and Varner & Taylor, for plaintiff in error.

R. P. White and L. V. Reid, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of LeFlore county, Okla., by I. H. Kempner, D. W. Kempner, R. Lee Kempner, S. E. Kempner, J. Seinsheimer, trustees of H. Kempner, an express trust, defendants in error, as plaintiffs below, against the First National Bank of Heavener, Okla., a corporation, plaintiff in error, defendant below, for recovery of $6,209.99, with interest, balance paid out upon sight draft drawn upon plaintiffs by the defendant for the sum of $15,250.

Parties will be referred to as plaintiffs and defendant, as they appeared in the lower court.

The petition, among other things, alleges that on the 22nd day of December, 1922, the defendant falsely stated and represented to the plaintiffs by telegram that A. M. Irwin of Waldron, Ark., had consigned 305 bales of cotton to the plaintiffs, which telegram was in words and figures as follows, to wit:

"1921, Dec. 22, A. M. 10:48
"Heavener, Okla., 1028A 22
"H. Kempner,
"Galveston, Tex.

"A. M. Irwin, Waldron, Ark., consigning three hundred five bales cotton to you. Will you honor draft fifty dollars per bale. Wire collect.

"(Signed) First Natl. Bank."

That plaintiff, believing that said 305 bales of cotton had been consigned, advised by telegram as follows:

"Galveston, Texas, Dec. 22, 1921.
"First National Bank,
    "Heavener, Okla.,
"Will honor draft provided cotton of good grade. No low grades.
"11:30 a. m.        (Signed) H. Kempner."

That on said day and date the defendant drew a certain sight draft upon the plaintiff, which sight draft was afterwards, on the 27th day of December, 1921, duly presented to plaintiff by the Texas Bank & Trust Company and paid by plaintiff, a copy of said sight draft is in words and figures as follows, to wit:

"The First National Bank,        No.____
"Bill Lading Attached for 305 B-C.
        "Heavener, Okla., Dec. 22, 1921.
"Pay to the order of First National Bank, Heavener, Okla., $15,250.00.
"Fifteen Thousand Two Hundred Fifty Dollars for value received and charge to account of
        "W. L. Lile, Cashier,
"To H. Kempner,
    "Galveston, Texas,
        "Texas Bank & Trust Co.

Indorsed on back:

"Pay to the order of any Bank or Trust Co.
"All prior indorsements guaranteed.
"First National Bank,
"86-454, Heavener, Okla. 86-454
"W. L. Lile, Cashier.

            "Paid, December 27, 1921,
            "Texas Bank & Trust Co."

And there was attached to said draft certain bills of lading showing the receipt of 305 bales of cotton by the Arkansas Western Railway Company at Waldron, Ark., and consigned to this plaintiff at Galveston, Tex., copies of the bills of lading were attached which were in the form required under the rules of the United States Interstate Commerce Commission; that relying upon the statements and representations of defendant, believing the same to be true, and relying upon the genuineness of said bills of lading, the plaintiff paid the draft in the sum of $15,250; that no cotton was ever delivered to said railway company by said A. M. Irwin, consigned to plaintiff as represented by the defendant; that the said bills of lading were false, fraudulent, and forged. That defendant by attaching to the draft the said false and fraudulent bills of lading and indorsing the same, thereby gave their implied warranty as to the genuineness of said consignment of cotton, and that

the same was of a good grade, and no low grade, and that said implied warranty on the part of the defendant had been thereby broken. That subsequent to the discovery of the fraud and forgery, plaintiff recovered from said A. M. Irwin the sum of $10.183.50. and expended in pursuing the said Irwin and collecting the same. the sum of $1.143.27, thereby making a net credit upon the aforesaid sum so paid. a balance of $9,040.23. leaving a balance due plaintiff of $6.209.99, with interest from December 22, 1921, to this date, and plaintiff prays judgment for said amount, together with interest and costs.

Defendant answered denying all of the allegations in plaintiff's petition, except those specifically admitted. Admitting that they sent the telegram. drew the draft, attached the bills of lading, which were delivered to them by A. M. Irwin, the consignor of the cotton described in said bills of lading, and forwarded the same for collection to the Texas Bank & Trust Company at Galveston, Tex., and that in due course of time received the sum of $15,234.75, the amount of said draft, less exchange charges, and placed the same to the credit of A. M. Irwin, the consignor. That said bills of lading were received by it in the due course of business, and without notice on its part, that said bills of lading were not genuine; that it acted in good faith in receiving the bills, drawing the draft, and sending the telegram. That plaintiff was advised that defendant had no interest in the transaction, but that it acted on behalf of A. M. Irwin, the consignor; that plaintiff was negligent in failing to notify the defendant of irregularities in connection with the transaction; that the bills of lading were forgeries; that if it had been timely advised, it could have protected itself, and that plaintiff is now estopped to recover against defendant any amount or loss for the reason that the defendant had lost possession and control of the deposit before it was advised by the plaintiff that the bills of lading were forgeries. and praying that plaintiff take nothing by its action.

Plaintiff filed its reply to defendant's answer, by way of general denial.

Upon these issues the cause proceeded to trial before a jury. At the close of all of the evidence in the case, the plaintiffs moved the court for a verdict in favor of the plaintiffs and against the defendant for the amount prayed for, with interest, which motion was by the court sustained, to which the defendant reserved an exception. Under instruction of the court the jury returned

its verdict in favor of the plaintiffs and against the defendant for the amount prayed for, together with interest at six per cent. Motion for a new trial was heard and overruled, and exception reserved. Judgment was pronounced upon the verdict of the jury in favor of the plaintiffs and against the defendant, for the sum of $6,-209.99, and interest from December 22, 1921, at six per cent. From said judgment the defendant brings this cause regularly upon appeal to this court.

Attorneys for defendant set up ten assignments of error upon the questions that the court erred in overruling the defendant's demurrer to the evidence of plaintiffs, to the exclusion of certain evidence offered by the defendant, to the giving of peremptory instruction to the jury, but content themselves in arguing the different propositions set forth in the assignment of errors, urging that the defendant acted solely and wholly as agent, and was therefore not responsible to the plaintiffs for the payment of the money under the circumstances under which it was had and received. That its connection with the case was in due course of business, and that it acted in good faith, and that it was not responsible under its warranty.

The attorneys for defendant at the close of their brief contend that whether the action of the plaintiffs be construed as sounding in tort, or on the theory of an implied warranty, by drawing the draft and indorsing the bills of lading, that the case should be reversed because of the errors of court in giving the peremptory instruction, excluding material evidence which was prejudicial to the defendant, and refusing to submit to the jury the question of agency of the defendant, and its good faith in the transaction. The attorneys for plaintiffs in answer to these contentions contend that there was no possible allegation contained in the answer upon which the defense of disclosing agency could be predicated but that there was an intimation that sometime, either before or after the transaction, plaintiffs were advised that defendant had no interest in the transaction, and even if the issue of agency for a disclosed principal is tendered by the answer, the defendant is in no way relieved because no proof was offered tending to support such issue, and that it was admitted by attorneys for defendant in their brief that in addition to proving agency on the part of the defendant, it was also incumbent on the defendant to prove that plaintiffs knew of such agency. The evidence introduced as shown by the record contains the telegram

of the defendants to the plaintiffs, the answering telegram of conditional acceptance, from plaintiffs to the defendant, as set out in full in the petition of plaintiffs. The draft drawn by the defendant on the plaintiffs, it will be observed, was not drawn by Irwin, the supposed consignor of the cotton, but by its cashier and indorsed by defendant, and it will be further observed that in the draft occurs these words, "Bill of lading attached for 305 B-C." The bills of lading for the supposed shipment from Waldron, Ark., to Galveston, Tex., were in the regular form required under the rules of the United States Interstate Commerce Commission, together with certain letters and telegrams that passed between the parties, and the further evidence that the bills of lading were a forgery, and no cotton was ever deposited with the railroad company, consigned, nor shipped to the plaintiffs under said bills of lading so indorsed by the defendant, and that said bills of lading were attached to the draft, in addition to having been referred to in the face of the draft. It is significant that the telegram signed by the defendant stated positively that A. M. Irwin was consigning 305 bales of cotton to the plaintiffs, and that said telegram was taken on its face, does not convey any idea that the First National Bank, the sender of the telegram, was acting as agent of A. M. Irwin. The acceptance of the offer made by the defendant to plaintiffs was by telegram, stating that the plaintiffs would honor the draft, providing the cotton was of good grade. The draft itself shows that it was drawn by the bank itself against plaintiffs, and not by A. M. Irwin, the consignor of the cotton, and was made payable to the order of the defendant, and was to be charged to the account of the defendant, and indorsed by the defendant, and in the face of the draft, as heretofore stated, we find "bill of lading attached 305 B-C," and the bills of lading were so attached and indorsed by the defendant, and nowhere from this record testimony can it be inferred that the defendant was acting as agent of Irwin. The case presented here is unlike a case where the consignor, as a customer of the bank, had drawn a draft against the plaintiff and deposited it with the defendant to be collected and credited to his account in due course of business, and in our view of the case, the defendant bank, even if it were an agent, entered into the contract in this case and thereby bound itself in such a way as to render it liable upon the contract. There is nothing in the record evidence to show that plaintiffs had any actual knowledge at the time of the payment of the draft that

the defendant bank was acting as agent, and any evidence as to a subsequent disclosure will not serve to relieve the defendant of responsibility.

This court in the case of Calman v. Kreipke, 40 Okla. 516, 139 Pac. 698, lays down the rule:

"Although an agent enters into a contract with the actual intention of binding his principal only, if his wording of the same, or the circumstances of the case are such as to bind himself, he will be personally liable thereon, notwithstanding the fact that he may have incidentally disclosed the name of his principal."

The evidence in this case discloses that even on the date that the draft was paid by the plaintiffs, that the plaintiffs did not know, as shown by the letter introduced in evidence to the defendant, making inquiry as to the disposition of the cotton and was not advised until two days later by telegram, that the cotton was for the account of Irwin, and there is no evidence to show that plaintiffs had any knowledge of any agency before payment of defendant's draft.

This case presents the sale of 305 bales of cotton all of good grade, no low grade, and in such a case the tender of the cotton is a condition precedent to the plaintiffs' liability, and if it is not performed, the purchaser has the right to reject payment, or if he has paid, to recover the price as money paid and received.

This rule seems to have been announced by this court in the case of Bower-Venus Grain Company v. Norman Milling Co., 86 Okla. 152, 207 Pac. 297. The question of good faith in this situation, in our opinion, does not enter into this transaction for the reason that there was a positive assurance from the defendant to the plaintiffs that the 305 bales of cotton were being consigned to plaintiffs. This representation was false, but the falsity was unknown to the defendant, but the plaintiffs, relying upon the truth of it, paid defendant's draft which shows on its face it was being paid on bills of lading attached for 305 bales of cotton.

This court, in the case of Madden v. Graham, 73 Okla. 23, 174 Pac. 259, said:

"An affirmation in regard to an existing fact, distinctly and positively made in the negotiations for trade, should be regarded as a contract, and enforced as a warranty."

In the body of the opinion this court says:

"What one positively affirms, with a view to induce another to part with his property, if relied upon and accepted as true, should

be held to be true regardless of whether he knew it to be false or not."

The position of attorneys for defendant seems to presuppose that the defendant occupies the same position in this case as though it had received for collection Irwin's draft, and simply transmitted it in the ordinary course of business for collection, and treat the matter in the citation of authority as if this fact was present in this case, by citing authority regarding the liability of banks handling drafts of its customers in the ordinary course of business. And in the cases cited there seeems to be no reference in the drafts to the bills of lading attached, and the cases cited we find do not contain any reference in the draft whatever to the bills of lading, and hence the authorities cited upon this proposition by attorneys for defendant on the above proposition can have no application to the facts presented here. The draft in this case is not the draft of Irwin, but is the draft of defendant, indorsed by the defendant, and showing in its face that it was for 305 bales of cotton as heretofore stated, and in our opinion this statement on the face of the draft makes the bills of lading a part of the draft itself, and takes this case out of the rules established in the cases cited by attorneys for defendant where no such condition existed.

The forged bills of lading in this case, referred to in the face of the draft and attached thereto, were not bills of lading and did not satisfy the condition which demanded the delivery of the bills of lading, and it is held, in effect, in the case of the Guaranty Trust Company of New York v. Grotiam, 114 Fed. 433, 57 L. R. A. 689, that the presentment of a forged bill of lading is not a bill of lading, any more than a counterfeit bill is real money, or a forged check is a check, and in the case supra, it was held:

"Money paid by the drawee upon a draft drawn against 'indorsed bills of lading' which are in fact fictitious, and accepted against such bills in ignorance of the fraud, may be recovered back from the payee."

And in that case the bill of exchange on its face showed that it was drawn on account of 8,417.50 bushels flax seed, just as in this case the draft was drawn on account of 305 bales of cotton.

In the early case, decided by the Supreme Court of the Territory of Oklahoma, of Keokuk Falls Improvement Co. v. Kingsland & Douglas Manufacturing Co., 5 Okla. 32, 47 Pac. 484, the territorial court decided that there must be something in the

body of the negotiable instrument itself to show that the drawer of the instrument is acting as agent for its principal, and in the body of the opinion the court said:

"It is equally clear that the liability of defendants as drawers of a negotiable instrument must be determined from the instrument itself. This is too well settled to admit of discussion. There is no distinction in this respect between the drawer of a bill of exchange and the maker of a promissory note."

This quotation is taken from the case of Tucker Manufacturing Co. v. Fairbanks, 98 Mass. 101, art. 1 which was a case as to the question of the admissibility of parol proof, where the maker sought to show that he was acting merely as the agent. Again we say that there is nothing in the face of the draft in this case to show that the defendant bank was acting as agent of Irwin.

The question of estoppel is not seriously urged or noticed in briefs of attorney for defendant, and in our opinion, from an examination of the record, it has no application to the facts in evidence in this case.

This case was for money paid upon a supposed interstate shipment, and whatever we have heretofore said in this opinion in regard to this matter, we are thoroughly of the opinion that this case has been entirely settled by the Fort Worth Elevator Company v. State Guaranty Bank of Blackwell, recently decided by this court and found in 93 Okla. 191, 220 Pac. 340, where it was held that in a case involving interstate commerce the federal law passed by Congress August 29, 1916, is applicable, part of which is as follows:

"That a person who negotiates or transfers for value a bill by indorsement or delivery, unless a contrary intention appears, warrants (a) that the bill is genuine; (b) that he has a legal right to transfer it; (c) that he has knowledge of no fact which would impair the validity or worth of the bill; (d) that he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a bill of goods represented thereby."

The first and second paragraphs of the syllabus of said opinion are as follows:

"1. Under Acts of Congress approved August 29. 1916, section 34 (U. S. Comp. St. sec. 8604qq) the person who negotiates or transfers for value a bill by indorsement or delivery unless a contrary intention appears warrants that the bill is genuine; that he has a legal right to transfer it; that he has knowledge of no fact which would impair the validity or worth of the bill; that he has a right to transfer the title to the goods, and the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a bill the goods represented thereby.

"2. Where a bank received from a party a draft with a bill of lading attached, and the bank gives the party credit for the amount, and then indorses the bill, and sends through his usual channel to the party on whom it is drawn, and the same is paid, and the bill proves to be a forgery, said bank is liable to the person paying same for the amount paid by him."

The instant case is stronger than the case above referred to for the reason that in that case a customer of the bank drew the draft and deposited it in the bank of defendant at Blackwell, Okla., for collection in the usual course of business, and from a reading of the opinion it would seem that the draft itself did not have in its face the indorsement that the bill of lading was attached for the shipment. The bills of lading attached to the draft were forgeries as in this case, and in that case the court held that the money paid out on the draft could be collected from the sending bank, and that the bank was liable to the person paying the same for the amount paid by him.

It therefore follows that in the case presenting the facts as presented here, where the bank itself drew the draft, payable to itself, with the recitation in the face of the draft that it was for 305 bales of cotton, indorsed by itself, the bills of lading indorsed by itself, must be held liable for the payment back to the plaintiffs in this case the amount of money sought to be collected by it in this action.

We are therefore of the opinion that the judgment of the lower court was correct and should be and is hereby affirmed.

By the Court: It is so ordered.