## MERCANTILE TRUST CO. v. ROLAND et al.

No. 18437. Opinion Filed March 25, 1930.

Rehearing Denied May 27, 1930.

Potterf, Gray & Poindexter, for plaintiff in error.

J. A. Bass and A. J. Hardy, for defendants in error.

LEACH, C. This action was commenced in the district court of Carter county by the Mercantile Trust Company of Illinois, a corporation, as plaintiff, against Gorman Roland and T. E. Roland, defendants, to recover possession of one Maxwell automobile truck, which truck was purchased by the defendants from the Slaughter Motor Company of Ardmore, Okla.; a portion of the purchase price of such truck was paid at the time of the sale and the remainder was evidenced by

eleven promissory notes payable monthly, and a conditional sale contract wherein the title to the truck was specifical.y reserved and retained by the seller until the full purchase price was paid, and it was provided therein that upon default of any of the terms of the contract, the seller would be entitled to the possession of the truck, and that all payments made by the buyer should be considered and treated as payment for the use of the truck and as damages for the failure of the purchaser to carry out the terms of the contract. The notes and contract were duly assigned to the Mercantile Trust Company, the plaintiff, who alleged in its petition that default had been made under the terms of the conditional sales contract in failing to pay maturing installment notes, and prayed that it be awarded possession of the truck and adjudged the owner thereof, and that it recover damages for the unlawful detention thereof; a writ of replevin was issued in the cause whereunder the truck was delivered to the plaintiff.

The defendants answered by general denial.

At the first trial of the cause, the court directed a verdict and entered judgment for the defendants, and that judgment was reversed on the ground that the trial court erred in failing to submit the issues to the jury and in directing a verdict. Mercantile Truck Co. v. Roland, 92 Okla. 126, 218 Pac. 826.

Upon remand of the action to the district court, a second trial was had which resulted in a verdict and judgment in favor of the defendants for the possession and return of the truck or its value, from which latter judgment the plaintiff brings this appeal and assigns several errors as grounds for reversal.

It is first contended that the evidence was insufficient to support the judgment; that the plaintiff, Mercantile Trust Company, was a bona fide purchaser for value in due course of the conditional sales contract and the notes, without notice of any defect therein or breach of warranty on the part of the seller, and that it is entitled to be protected as such, and, in support of such contention, it quotes the following from 11 Corpus Juris, 668:

"The rule as laid down in most jurisdictions is that a bona fide assignee of a negotiable mortgage note, before maturity, and for value, will take the mortgaged property free from equities and defenses existing between the original parties to the mortgage, at least where the equities are secret or latent; and it would seem that this rule obtains, although the assignee takes the secured note as collateral security. It has been held, however, that the rule applies only where the mortgage secures negotiable paper. Unless the assignee stands in the position of a bona fide purchaser, however, he will take subject to all equities and defenses between the original parties, as where he takes with notice of such equities or defenses, or where the note secured by the mortgage is overdue at the time it is assigned."

The plaintiff also quotes from Anglo-California Trust Co. v. Pacific Acceptance Corporation (Cal.) 232 Pac. 489, and Long v. McAvoy (Wash.) 233 Pac. 930, which actions involved conditional sales contracts on automobiles, but the issues in those cases did not involve the question of negotiability of the contracts, for such question apparently was not raised or decided. The facts in those cases are not similar to those in the case before us, and the decision and the rules of law therein announced do not aid us in the determination of the question here raised.

The plaintiff also cites a number of cases from this court, among such being Western Exch. Bank of Kansas City, Mo., v. Coleman, 38 Okla. 178, 132 Pac. 488, and later cases following the same rule, wherein it was held that the maker of a negotiable promissory note could not defeat the same in the hands of a bona fide purchaser for value before maturity by alleging and showing the violation of a warranty on collateral agreement relating to the sale of certain property for which the note had been given which occurred subsequent to the transfer of the notes. The rule quoted from Corpus Juris, and the cases cited from this court, all relate to and are based upon actions founded on negotiable paper, or to security given thereon, and none relate to an action based upon an instrument similar in character to the conditional sales contract under which the plaintiff here based its right of action.

The plaintiff advances argument as though it were suing to enforce a lien or security on the notes referred to in the contract, and that it is protected by reason of such notes.

Such argument and premise, however, cannot be sustained, because the plaintiff based its right of action wholly upon the conditional sales contract and alleged that it was the title holder and owner of the truck, and prayed judgment accordingly, thereby abandoning any rights or benefits which would have arisen under the notes had the seller or assignee elected to treat the sale as ab-

solute instead of conditional and rescinding the same.

The plaintiff does not seek to foreclose any lien against the truck, or to repossess the same in order to sell it as security for the payment of the notes, but relies upon the terms and conditions of the conditional sales contract wherein the title to the property is retained in the seller, treats the sale as rescinded and the contract terminated, and claims absolute ownership of the truck.

The legal assertion or enforcement by the plaintiff of any indebtedness as against the defendants on the notes referred to in the contract would be inconsistent with its claim of absolute ownership of title to the truck, and any action to enforce liability on such notes by the plaintiff would be held an election to treat the sale of the truck as absolute and the title thereto would vest in the buyer free of any lien in favor of the seller and defeat the plaintiff's asserted claim of ownership in the truck under the conditional sales contract.

"Where a sale of personal property is made in which the vendor retains the title to the property until the purchase price thereof is paid and takes notes from the purchaser for such purchase price, and upon default in the payment of said notes the vendor brings an action upon said notes, it is an election by the vendor to make such conditional sale absolute and defeats the right of the vendor to maintain action of replevin for said personal property." Galbreath v. Mayo, 70 Okla. 252, 174 Pac. 517.

In the case of National Cash Register Co. v. Stockyards Cash Market, 100 Okla. 150, 228 Pac. 778, the plaintiff obtained judgment for the balance due on certain notes given as evidence of part of the purchase price of cash registers sold and also sought to replevin the registers by virtue of a conditional sales contract wherein the title to the machines was retained in the seller until payment of the full purchase price. It was said in the syllabus of that case:

"An equitable lien foreclosable in equity does not arise in favor of the seller under a reservation of title in an executory sale of chattels on condition where it is obvious from the plain language of the contract that the buyer should acquire no title or right of ownership therein until such chattels had been fully paid for, and that the buyer should acquire no interest or equity therein by reason of a part payment by him of the purchase price, and where it appears that the seller has reserved the right at his election to retake the property upon a breach by the buyer of the terms and conditions of payment"

—and in the body of the opinion:

"To hold that a foreclosable lien existed in the instant case would in effect destroy the right of the seller under contracts similar to the one here involved to rescind the contract and repossess the property by a proceeding at law. * * * Our own court has at no time held that a contract of conditional sale similar to the contract involved in the case at bar, as a matter of law, creates the right in the seller to an equitable lien. On the other hand, it has held that such contracts are not chattel mortgages, and that these contracts are what their terms so clearly declare them to be, sales upon condition subject to be rescinded upon the election of the seller to retake the property upon a breach of the condition by the buyer. Galbreath v. Mayo, supra."

In the case of Parker v. Funk (Cal.) 197 Pac. 83, it was held in the syllabus:

"1. Where a conditional sales contract of a truck not delivered recited receipt of the truck by the buyer, who later took possession of a part of the truck, his obligation to pay was subject to the implied condition of a full delivery, and he was not in default until delivery or a request by the seller to be allowed to attach the undelivered part to the part in the buyer's possession.

"2. Under Code Civ. Proc. sec. 368, the assignee of the seller in a conditional sales contract took the contract and the title to the thing sold subject to any rights existing in favor of the buyer against the seller.

"6. A party to a contract may assert as against the assignee of the other party any right which he could assert against the other party, regardless of whether such right conforms to the face of the contract."

The holding in the next above case is largely followed in the later case of Whiting v. Squeglia (Cal.) 232 Pac. 986.

Our statutes provide:

Section 210, C. O. S. 1921: "In the case of an assignment of a thing in action, the action of the assignee shall be without prejudice to any set-off or other defense now allowed; but this section shall not apply to negotiable bonds, promissory notes or bills of exchange, transferred in good faith and upon good consideration, before due."

Section 279, C. O. S. 1921: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other; but the two demands must be deemed compensated so far as they equal each other."

"Although a nonnegotiable note is in the hands of a bona fide purchaser before ma-

turity, it is subject to every defense in an action by the holder that could have been interposed against it in the hands of the original payee." First State Bank of Cheyenne v. Barton, 129 Okla. 67, 263 Pac. 142.

See, also, State Guaranty Bank of Okeene v. Doerfler, 99 Okla. 258, 226 Pac. 1054; Keyes v. Ponder, 118 Okla. 234, 226 Pac. 73; Schuman v. Bank of California (Ore.) 233 Pac. 860.

"A replevin action is primarily one for the possession of personal property; yet it is sufficiently flexible to authorize a settlement of all the equities between the parties arising from or growing out of the main controversy." Graves v. Mayberry, 137 Okla. 218, 278 Pac. 1111.

Plaintiff's action being one in replevin to recover chattels under a claim of absolute ownership under a conditional sales contract, and the contract itself failing to possess any of the attributes or qualities of a negotiable instrument or of security for negotiable paper, we conclude and hold that the assignee took the same subject to any rights existing in favor of the buyer against the seller, and that the equities of the parties in controversy may be settled in the replevin action.

It is next contended:

"The evidence failed to establish damages for the breach of a warranty of fitness or quality of the truck in an amount sufficient to constitute a defense or to defeat the plaintiff's right to recover."

Our statutes on the question of measure of damages caused by the breach of a warranty of personal property provide:

Section 5989, O. O. S. 1921: "The detriment caused by the breach of a warranty of the quality of personal property, is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time."

Section 5990, O. O. S. 1921: "The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is defined in the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

Such statutes have been construed by this court in a number of cases: Wiggins v. Jackson, 31 Okla. 292, 121 Pac. 662; Binkley v. Ball, 127 Okla. 197, 260 Pac. 1; and others.

"Upon the trial of a case for the breach of a warranty of fitness for a particular purpose, it is necessary to prove the value of the property with its infirmity and also its value if it had been as warranted, together with the loss incurred in an effort in good faith to use it for the purpose warranted, and in the absence of such proof the purchase price is prima facie its value as warranted." Moline Plow Co. v. Wilson, 74 Okla. 89, 176 Pac. 970.

The evidence of the defendants on the question of damage or loss was in part to the effect and in substance that they paid $300 cash on the truck at the time of its purchase, and later paid the first two maturing notes; that after they had used it approximately 20 days, the radiator began to leak, the braces on the fender broke, a solid tire on the back wheel came loose, the engine pumped oil, and that in about 60 days the battery went down; that they paid out about $114.45 in an effort to repair and use the truck; that finally they tendered the truck to the Slaughter Motor Company; and later they put it in a garage. The date when the truck was tendered to the Slaughter Motor Company, and when it was put in the Palace Garage, does not clearly appear from the evidence, but as we gather from the record it was about two weeks before the action was filed. The truck was purchased May 25, 1918, and this action was filed on the 26th day of September, 1918. The defendant T. E. Roland testified that the original cost of the car (truck) was $1,580. Also, the following questions and answers were asked and given by the witness:

"Q. I'll ask you if you were acquainted with the value of an automobile truck of the Maxwell make, the same character and kind, at the time you put this in the Palace Garage? A. Yes. Q. What would be the reasonable value at that time? A. $450. Q. Now, have you ever seen the truck since you put it in the Palace Garage? A. Not that I know of."

On cross-examination the witness testified that he agreed to pay $1,380 for the truck, and that its value was about $450 at the time it was replevined, that they got two or three weeks' use of the truck. The testimony as to the value of the truck at the time it was taken in replevin, some four months subsequent to the date of sale and after the truck had been used as testified to by the defendant, was not sufficient evidence, as we view it, on which to base or fix the actual value of the truck at the time or date of its sale.

"In a suit on a note for the purchase price of personal property, where the maker of the note pleads as a defense a breach of war-

ranty as to quality, the measure of damages for the breach is the difference between the value of the article as it was warranted to be and its actual value; and, in such case, the burden is upon the defendant to prove the breach of the warranty and the amount of the damages.

"A verdict based upon conjecture and not upon evidence, should be set aside." Spaulding Mfg. Co. v. Holiday, 32 Okla. 823, 124 Pac. 35.

This action being one in replevin, it was necessary that the defendants prove a loss or damage in an amount equal to the balance then due on the contract, otherwise the plaintiff should prevail.

"Evidence of a breach of an implied warranty of fitness in a machine to do the work for which it was intended, without evidence of damage resulting therefrom in an amount equal to, or in excess of the unpaid installments due upon a conditional sale contract, constitutes no defense to an action of replevin brought by the vendor." Remington Typewriter Co. v. Rutherford, 56 Okla. 291, 156 Pac. 166.

"The plea of breach of warranty is the substantial equivalent of plea of total or partial failure of consideration, and may be shown as a defense pro tanto in a replevin action between the original parties based on a conditional sales contract for the sale of machinery." Wayne Tank & Pump Co. v. Harper, 118 Okla. 274, 247 Pac. 985.

"Where the right to possession of property arises on contract, as in case of a chattel mortgage, or where the seller has retained title until the purchase price has been paid, anything which tends to show that no debt exists is admissible as a set-off in replevin; but to defeat the action the set-off must equal the debt." Zimmerman, Wells-Brown Co. v. Sunset Lumber Co. (Ore.) 111 Pac. 690.

See, also, McKean v. Apparatus Co., 74 Miss. 119, 20 So. 869, 60 A. S. R. 502; Peuser v. Marsh, 218 N. Y. 505, 113 N. E. 494.

We are of the opinion that the trial court, in order to determine the rights of the respective parties in the property involved, if a breach of warranty of the property be established and found, should have submitted the question of the value of the property to the jury and directed it to determine and fix its value as warranted at the time of sale and its actual value at that time, also the amount of damage, if any, sufficient to fairly compensate the defendants for their loss, if any, incurred by an honest effort in good faith to use the truck for the purpose for which it was sold and warranted, as is herein elsewhere defined by statute.

In the event the total amount of damages suffered by the defendant should be found to be less than the balance due under the sale contract, then judgment should be entered for the plaintiff for possession of the truck for the purpose of allowing the plaintiff to sell the truck to satisfy and pay the difference between the amount of damages found and allowed the defendants and the amount and balance due on the truck under the sale contract, unless the defendants should elect to pay the plaintiffs such difference and retain the property. If the total amount of damage found and allowed the defendants by the jury, if any, should equal or exceed the balance and amount due under the sale contract, then, in that event, judgment should be for the defendants for possession of the truck.

We are of the opinion and hold, that the evidence offered by the defendants failed to meet the requirement of the statute relating to the measure of damages in such a case, in that the actual value of the property on the date of its sale was not shown and the proof was insufficient to justify or sustain the jury in finding that the damage or detriment suffered by the purchaser equaled the balance due on the purchase price of the truck.

It is next contended that the trial court committed error in allowing the defendants to introduce any evidence of an oral warranty in the face of a written contract and the admissions of the defendants that they received a written waranty with the truck. In support of the proposition plaintiff cites the case of Mountcastle v. Miller, 66 Okla. 40, 166 Pac. 1057, and others of similar import, wherein it is held:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

One of the defendants testified that he looked the truck over and told the seller or its agent what he wanted, what he had in mind, and the seller told him that the truck would do what he wanted, and even more; that is, freight business between Ardmore and the oil field; that they discussed that quite at length, and, on the representations of the seller, he bought the truck. The defendant admitted on cross-examination that the seller gave him some printed form of warranty against defective parts for 90 days. The plaintiff introduced in evidence an instruction book issued by the Maxwell Motor Company, which contained a printed form of

warranty against defective material and workmanship in the machine for 90 days upon the condition that it would make good such defects subject to its approval and examination of the parts at its factory, and expressly excepted from such warranty tires, rims, ignition apparatus, starting devices, generators, batteries, and other trade accessories, and testified that a similar book was delivered to the purchaser.

In the case of International Harvester Co. v. Lawyer, 56 Okla. 207, 155 Pac. 617, the defendant, a merchant, purchased certain automobiles from the plaintiff on the oral warranty of the seller that the machines were fit for use in a particular territory. The machine proved unfit for use in that locality, and in reply to the defense of oral warranty set up by defendant, the plaintiff alleged that it furnished a written warranty with each machine, and that such written warranty excluded all other warranties, but such contention was decided adversely to the plaintiff in the trial court and the judgment was sustained on appeal. In the syllabus of that case, it is said:

"The buyer knew nothing about the capacity of the automobile purchased. The seller was an expert in the handling of automobiles, and was engaged in the business of demonstrating and selling the same. Held, a statement made by the seller that the automobile could be driven over the roads in a certain vicinity satisfactorily constituted a warranty, and was not the expression of a mere opinion."

"Where an article of personal property is sold for a definite purpose made known to seller, and the seller represents that the article will perform that particular purpose, there is a warranty of fitness which protects the purchaser and for which the seller is liable in the event the article fails to do what it was sold to do." Ransom v. Robinson Packer Co., 120 Okla. 17, 250 Pac. 119.

"In order to constitute an express warranty, no particular language is necessary. It is not required that it shall be in writing, or be made in specific terms; and it is not at all necessary that the word 'warrant' or 'warranty' shall be used. Any direct and positive affirmation of a matter of fact, as distinguished from a mere matter of opinion or judgment, made by the seller during the sale negotiations and as a part of the contract, designed by him to induce the action of the purchaser, and actually * * * relied upon by the latter in making the purchase, will be deemed to be a 'warranty.'" Frey v. Failes, 37 Okla. 297, 132 Pac. 342.

"An express warranty in a contract of sale usually excludes an implied warranty; but, in the sale of machinery under a written contract of sale, in addition to the express warranty contained in the written contract, there is an implied warranty that such machine or article shall correspond with the description contained in the written contract of sale, and that the same is suitable to perform the ordinary work for which the described article is made or manufactured; and such an implied warranty does not contradict nor conflict with the express warranty." Fairbanks, Morse & Co. v. Miller, 80 Okla. 265, 195 Pac. 1083.

"In the absence of contract which negatives the same, there is an implied warranty in the sale of a motor truck that it is suitable to perform the ordinary work for which it was made.

"That the article sold was definite and well-known furnishes no exception to said rule as applied to sale of machinery.

"That the vendor was a regular dealer—not the manufacturer of such truck—furnishes no exception to the rules under syllabi two and three, supra, where the article is sold in the ordinary course of business." G. M. C. Truck Co. v. Kelly, 105 Okla. 84, 231 Pac. 882.

See, also, Roudebush v. Colonial Supply Co., 120 Okla. 292, 251 Pac. 474; Dunn v. Vaughan, 120 Okla. 240, 251 Pac. 472; First Nat. Bank of Heavener v. Kempner, Trustees, 103 Okla. 237, 229 Pac. 840; Rudolph Wurlitzer Co. v. Alred, 120 Okla. 3, 249 Pac. 724; J. B. Colt Co. v. Koehn, 128 Okla. 39, 260 Pac. 1060; Olson v. Sullivan, 109 Okla. 297, 234 Pac. 634.

We are of the opinion, and hold, that there was sufficient evidence to warrant the court in submitting the question and issue arising on the oral representation or warranty of the seller as to the truck being suitable and fitted for the use for which the buyer desired and purchased the same, and that the purchaser was not limited or restricted to the conditional and limited printed warranty contained in the instruction book furnished by the manufacturer of the truck.

Complaint is made concerning complaints made by defendants to the Slaughter Motor Company, after the sale and transfer of the contract and notes, about the truck, with request that the Motor Company fix it, which request was refused. No citation of authority is presented in support of the argument, nor is the testimony specifically set forth or the objection made thereto at the time of its admission set out.

"Where plaintiff in error complains of admission of certain irrelevant, incompetent, and immaterial evidence over his objection, and fails to set out in his brief the full substance of the testimony to the admission of which he objects, and fails to state specifically his objection thereto, as required by rule

26 of this court, it will be deemed as to such assignment that he has waived and abandoned same." Henderson v. Todd, 91 Okla. 18, 215 Pac. 607.

See, also, Harrelson v. Brown, 131 Okla. 267, 268 Pac. 731.

It is next contended that the court erred in instructing the jury as to the law of the case and refusing to give certain requested instructions. In response to the contention made by the plaintiff, the defendants call attention to the fact that no proper exception was taken or preserved to the instructions given or requested, in that the objection and exception to the alleged erroneous instruction was not signed by the trial judge as required by law.

"In order for a party to have instructions given by the trial court reviewed on appeal, it is necessary to have his exceptions noted to said instructions and to have said exceptions signed by the trial judge as required by section 542, Comp. St. 1921." Hornstein v. Yarrington, 110 Okla. 175, 237 Pac. 73; Brown v. Nichols, 117 Okla. 233, 245 Pac. 850.

It appears that no proper record of the exceptions was preserved by plaintiff to its objections to instructions complained of, and therefore the error, if any, in the instruction cannot be reviewed. Proper exceptions were preserved to ruling of the court in denying plaintiff's requested instructions, but the issues arising thereon are discussed and determined under other assignments elsewhere in the opinion.

For the reasons herein stated, the cause is reversed and remanded, with instructions to the trial court to grant the plaintiff a new trial, and to proceed in accordance with the views expressed herein.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur. FOSTER, Commissioner, dissents.

By the Court: It is so ordered.

Note.—See "Appeal and Error," 3 C. J. §818, p. 919, n. 34. "Replevin," 34 Cyc. p. 1517, n. 39. "Sales," 35 Cyc. p. 695, n. 7. "Trial," 38 Cyc. p. 1793, n. 33.