## FIRST STATE BANK OF CHEYENNE v. BARTON.

No. 17683.   Opinion Filed Jan. 17, 1928.

(Syllabus.)

**1. Banks and Banking—National Banks—Payments or Transfers by Failing Bank—Requisites for Invalidity.**

A transfer of property or payment by a national bank, to be void under section 5242, R. S. U. S. (sec. 91, vol. 12, U. S. C. A.), must be made after the commission of an act of insolvency, or in contemplation thereof, and with the view of giving a preference to one creditor over another, or with a view to prevent the application of its assets as provided by law.

**2. Bills and Notes—Nonnegotiability of Note Providing that Payee Bank upon Feeling Insecure May Credit Notes with Maker's Funds on Deposit.**

A note, providing that the holder is authorized at any time he feels insecure regarding payment of the note to take any or all funds which the maker may have on deposit with the payee bank and place same as a credit on the note, is nonnegotiable.

**3. Same—Defenses Available Against Nonnegotiable Note in Hands of Bona Fide Purchaser.**

Although a nonnegotiable note is in the hands of a bona fide purchaser before maturity, it is subject to every defense in an action by the holder that could have been interposed against it in the hands of the original payee.

Commissioners' Opinion, Division No. 2.

Error from District Court, Caddo County.

Action by the First State Bank of Chey-

enne against C. L. Barton. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Wilbur J. Holleman, for plaintiff in error.

Morris, Johnson & Wilhite, for defendant in error.

HALL, C. This is an action by the First State Bank of Cheyenne, Okla., against C. L. Barton, to recover a balance of $750 alleged as due on a promissory note originally executed to the First National Bank of Cheyenne, for the sum of $2,750. The note matured on July 1. 1924. On the preceding March 14th, the First National Bank of Cheyenne liquidated its assets, disorganized its board of directors and officers, and to all intents and purposes dissolved the corporation. A new bank was organized called the "First State Bank of Cheyenne," which is plaintiff in error in this action, and which purchased or took over the assets and liabilities of said First National Bank. Among the assets of the First National Bank was the note in controversy. Before the transfer was made, through some negotiations between the president of the predecessor bank and the defendant in error, C. L. Barton, Barton agreed to pay, and did later pay, $2,000 on the note— the payment having been made by means of a draft drawn by the payee bank to Barton through some bank at Carnegie, Okla.

The defendant contends that in anticipating the payment on the note, he had an express agreement with Jackson, the president of the payee bank and the holder of the note, that if he, the defendant, would pay $2,000 in cash at that time, the bank would purchase from defendant, for the sum of $750, a certain safe and adding machine which was already in the possession of the bank, the same having been loaned to the bank by defendant; that the purchase price was to be credited on the note, and on payment of the $2,000 the note was to be surrendered to the defendant.

It is the theory of the plaintiff in error that no such agreement was ever made, and that Barton paid the $2,000 on the note, a considerable time before the indebtedness was due, for some unknown reason other than the successor bank wanted all large notes reduced before taking over or purchasing the paper; and, further, that the plaintiff in error, the successor of the First National Bank, purchased this note in due course and for value and without any knowledge of any existing equities between the maker and the original payee.

It was the further contention of the defendant that the plaintiff in error bank, through its cashier, Mr. Higgins, who was cashier of the defunct bank, had knowledge of the transaction between defendant, Barton, and the First National Bank, payee of the note, and he further contends that the note is not negotiable because of its containing the following clause:

"If at any time the holders of this note feel insecure regarding payment of this note, said holder is authorized to take any or all funds I may have on deposit at the First National Bank, Cheyenne, Okla., to my credit and place as a credit to this note."

The testimony was decidedly conflicting. At the close of the testimony the defendant interposed a demurrer to the evidence of plaintiff. The court sustained this demurrer, and did so apparently upon the ground that the plaintiff could not maintain the cause of action because of its transferring this note, together with its other property, when it was in a precarious financial condition, and in fact to prevent an established insolvency, assuming that such transfer came within the prohibition of section 5242, Rev. Stat. U. S., and was therefore void. The section of the federal statutes above referred to reads as follows:

"All transfers of the notes, bonds, bills of exchange or other evidences of debt owing to any national banking association or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, made with the view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be uterly null and void. * * *"

Assuming that the transfer of the notes, and all other property of the First National Bank, was made to prevent the Treasury Department of the federal government from taking over the bank and liquidating the assets pursuant to their regulations or law, still this transfer would not be void, because it does not appear, nor is it indicated, that the transfer was made with the view of giving preference to one creditor over another, or with the view of preventing the application of its assets as provided by law, which in simple language means with a view of escaping the law requiring a pro rata distribution of the assets among the creditors.

In the present case all of the bank's prop-

erty was transferred to one institution, which was not a creditor of the bank, but, instead, such institution assumed the responsibility of paying the depositors of the defunct or disorganized bank. This construction is in harmony with the construction placed on this act in the case of National Security Bank v. Price, 22 Fed. 697; affirmed, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682.

Therefore, the motion of defendant for a directed verdict or a demurrer to the evidence should have been overruled.

The next question involves a proposition of law highly technical. We refer to the question of the negotiability of the note because it contained the accelerating clause quoted in a foregoing paragraph.

Courts have always placed a liberal construction on commercial paper in the form of promissory notes, with the end in view that such instruments should be held negotiable, if such construction by any fair means is permissible. With this construction in mind, and its application here, nevertheless, in view of a well-considered decision of this court in the case of Oklahoma State Bank v. First Nat. Bank of Grandfield, 108 Okla. 272, 236 Pac. 581, we think the clause contained in the note in the present case impaired its negotiability. There is at least as strong a reason for holding the note in the present case nonnegotiable as there is in holding as nonnegotiable the note in the case of the Grandfield bank. The only difference between the two provisions is that in the Grandfield Case there existed but one contingency—the deeming of insecurity by the holder. In the present case there are two contingencies: The deeming of insecurity by the holder, and the contingency of the maker having on deposit in the payee bank funds to his credit.

In regard to the accelerating clause in the present case, if the borrower or maker of the note is a customer of the bank making the loan (which generally is the case), the holder at any time, with no other reason than his feeling insecure, can appropriate without the knowledge of the maker any and all funds to the credit of the maker on deposit in said bank, and apply same as a partial payment on the note or full discharge of the obligation. Then, through no fault of the maker, a note, which had been paid, would be left where it might, under certain circumstances, creep into circulation. In case the note were transferred, if the instrument is negotiable, the

holder in due course could force payment a second time.

Nearly all courts agree that an acceleration clause for nonpayment does not impair negotiability; but other than that burden "a negotiable bill or note is a courier without luggage," which is the language of Chief Justice Gibson in the case of Overton v. Tyler, 3 Pa. 346, 43 Am. Dec. 645. In the recent case of Old Colony Trust Co. v. Stumpel, 126 Misc. (N. Y) 375, 213 N. Y. S. 536, rendered January, 1926, this subject and particular point at issue received unusual treatment and discussion. All the cases bearing upon the subject are there collected. In the body of the opinion, Justice Proskauer said:

"Professor Chafee has formulated as a test that 'payment can be accelerated only by the performance of an act regularly incident to the collection of the paper'. 32 H. L. R. 756, 773. Judge Dawkins' suggestion in Farmers & Merchants Bank v. Davies, 144 La. 532, 540, 80 So. 713, 715, is:

" 'Wherever the additional stipulations are merely in aid of the collection of the note, and do not constitute an undertaking to give or do something else foreign to that end, they do not destroy negotiability.' .

"In no reported case has a clause, accelerating maturity if the holder deems himself insecure, been held negotiable, though a few states have gone as far as to hold negotiable notes with clauses accelerating maturity upon insolvency of the maker or attachment of the property securing the note." (Citing numerous cases.)

We find no authority which would justify the conclusion that the note in the present case is negotiable. As we have already said, there is no legal distinction whatever between the note in the present case and in the Grandfield Bank Case, except, perhaps, in the present case the route for collection is a little less difficult or more direct, providing, of course, that the borrower has funds in the payee bank. The note being nonnegotiable, it is immaterial whether the plaintiff bank was a bona fide purchaser before maturity or not, because in such case the note is subject to every legal defense which could have been interposed against it in the hands of the original payee.

Plaintiff's motion for a directed verdict was properly overruled.

For the reasons herein stated, the judgment of the court below is hereby reversed with directions to grant a new trial.

BENNETT, HERR, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 840, '§814 (Anno). (2) 8 C. J. p. 139, §239. (3) 8 C. J. p. 720, §1006; anno. 17 A. L. R. 862; 3 R. C. L. p. 1026; 1 R. C. L. Supp. p. 948; 4 R. C. L. Supp. p. 229; 6 R. C. L. Supp. p. 213.