Gloria M. LOHMAN, Administratrix of the Estate of William D. Lohman, Deceased, Appellant,

v.

The NATIONAL BANK OF COMMERCE IN PAWHUSKA, Oklahoma, et al., Appellees.

No. 44606.

Supreme Court of Oklahoma.

Sept. 18, 1973.

Jack W. Love, Robinson, Boggess, Wright, Love & Nance, Oklahoma City,

Stan E. Wisdom, Jochems, Sargent & Blaes, Wichita, Kan., for appellant.

Charles R. Gray, Gray & Palmer, Pawhuska, John M. Wall, Sedan, Kan., for appellees.

IRWIN, Justice:

Appellee, The National Bank of Commerce of Pawhuska, Pawhuska, Oklahoma, issued two $4,000.00 cashier's checks. The issue presented is whether Appellant, who is the Administratrix of the Estate of William D. Lohman, Deceased, or the principal appellee, The Federal Deposit Insurance Company [F.D.I.C.], Receiver of the Cedar Vale National Bank, Cedar Vale, Kansas, is entitled to the proceeds represented by the two cashier's checks.

The National Bank of Commerce of Pawhuska made no claim to the proceeds and tendered them into court.

. The cashier's checks were purchased by Thayne D. Oltjen, then Vice-President of Cedar Vale National Bank (Cedar Bank) with funds provided by William D. Lohman prior to his death. Lohman had deposited the funds in Oltjen's personal bank account and Oltjen drew a check on that account to pay for the cashier's checks. Harry Carter was the named payee in one of the cashier's checks and D. C. Simms was the named payee in the other. The cashier's checks were allegedly purchased to be applied on the outstanding notes that Carter and Simms owed to Cedar Bank. Instead of applying the cashier's checks on the notes, Oltjen subsequently delivered them to Lohman.

Appellant claims ownership of the funds on the theory that Oltjen purchased the checks as the agent of Lohman; that the checks were not deposited in Cedar Bank; that Oltjen delivered the checks to his principal, Lohman, the true owner; and the checks were in Lohman's possession at the time of his death. Appellant also relies upon a judgment rendered by a district court in Kansas.

F.D.I.C. claims ownership of the funds on the theory that Oltjen purchased and

obtained the cashier's checks as an agent and officer of Cedar Bank; that the checks represented funds paid to an officer of Cedar Bank on the two outstanding notes payable to Cedar Bank by Carter and Simms; and that Oltjen had no authority to deliver the checks to Lohman.

F.D.I.C. also claims ownership to the funds on the theory that when Lohman made the deposit in the personal account of Oltjen, such deposit constituted a payment to Cedar Bank because it was made for the purpose of being applied to two notes owing to Cedar Bank and Oltjen was an officer and agent of Cedar Bank. In view of our disposition of this case on other grounds, we find it unnecessary to consider this argument.

The trial court found the checks represented funds received by Oltjen to be applied on the two outstanding notes of Carter and Simms payable to Cedar Bank, and the checks having been obtained by Oltjen as Vice-President of Cedar Bank, for application on the two notes, became the property of Cedar Bank, and as its Receiver, F.D.I.C. was entitled to the funds. Judgment was rendered in favor of F.D.I.C. Appellant appealed.

The record discloses that on January 16, 1967, a note in the sum of $49,982.90, due October 17, 1967, was executed in favor of Cedar Bank, purportedly signed by Harry Carter; and on May 24, 1967, a note in the sum of $47,403.00, due December 1, 1967, was executed in favor of Cedar Bank, purportedly signed by D. C. Simms. Carter and Simms are fictitious persons.

Decedent Lohman, during his lifetime, lived in Mobridge, South Dakota, and was a customer of Cedar Bank. Lohman had some personal transactions with Oltjen and while Oltjen was in Mobridge, Oltjen opened an account with a bank in Mobridge.

Prior to June 30, 1967, Oltjen contacted Lohman and (according to the stipulation of the parties) informed him:

"* * *

"* * * that the Bank Examiners were questioning Notes of D. C. Simms and Harry Carter, which Notes were payable to the Cedar Vale National Bank of Cedar Vale, Kansas, and that R. D. Oltjen (Thayne Oltjen's father and an officer of Cedar Bank) and Thayne Oltjen had advised Lohman that he should get D. C. Simms and Harry Carter to pay the Notes in full, surrender the security for the same or, at least, pay the interest on the Notes.

"* * *

"William D. Lohman advised Thayne Oltjen that he (Lohman) would deposit $8,000.00 in this Bank Account (Oltjen's Mobridge account), and directed that Thayne Oltjen go to Pawhuska and to the Bank of Commerce in Pawhuska, Oklahoma, and purchase two Cashier's Checks, each in the amount of $4,000.00, and apply the sum of $4,000.00 to the interest and principal on the D. C. Simms' obligation; and apply a like sum of $4,000.00 on the interest and principal obligation of the Harry Carter note.

"On or about the 30th day of June 1967, Thayne Oltjen went to Pawhuska, Oklahoma, and to the Bank of Commerce at Pawhuska, Oklahoma, and did there purchase Cashier's Check No. 113329, payable to one, Harry Carter; and, the same time, purchased a Cashier's Check No. 113330, payable to D. C. Simms, in the amount of $4,000.00.

"At the time of the purchase of the said Cashier's Checks, Thayne Oltjen was Vice-President of the Cedar Vale National Bank, of Cedar Vale, Kansas, and that the said Checks were purchased by the said Thayne D. Oltjen for the purpose of applying the proceeds of said Checks on the indebtedness of D. C. Simms and Harry Carter at the Cedar Vale National Bank, of Cedar Vale, Kansas; all of such acts of Thayne Oltjen were at the direction of William Lohman.

"Upon return of Thayne Oltjen to Cedar Vale, Kansas, with the Cashier's

Checks in possession, he discovered that the Bank Examiners were at the Bank, so that he retained the two Cashier's Checks and did not deliver them to the Bank, nor make application of any kind of the funds represented by the Checks. Thus, he did not deliver the checks to the Cedar Vale National Bank and apply the proceeds therefrom on the debts of D. C. Simms and Harry Carter.

"That on or about Friday, July 7th, when William D. Lohman was present in the Cedar Vale Bank at a conference with R. D. Oltjen concerning the Bank Examiners, the representatives of the control of the currency in the Federal Bureau of Investigation, he re-delivered the Cashier's Checks to William D. Lohman. Thereafter, he knew nothing further about the Cashier's Checks."

On or about July 7, 1967, Cedar Bank was closed and F.D.I.C. was appointed its Receiver. Shortly thereafter Lohman died and the two cashier's checks were found in his possession.

Before considering the contentions of the parties we should first resolve certain facts disclosed in the record, which in our opinion, appellant has misinterpreted. Appellant takes the position that Lohman instructed Oltjen on the exact specifics and mechanics of how the payment would be made on the notes. In her statement of facts, appellant sets forth a portion of a judgment rendered by a District Court in the State of Kansas wherein it was found that Carter and Simms were named as payees in the cashier's checks under the instructions of Lohman; and that no consideration was given for Lohman's transferring the funds to Oltjen's Mobridge bank account, and in all respects Oltjen acted under the instructions of Lohman.

The Kansas case involved an action between the Special Administrator of the Estate of William D. Lohman, Deceased, as plaintiff, against Thayne Oltjen and R. D. Oltjen, defendants. R. D. Oltjen is the father of Thayne Oltjen and was an officer of Cedar Bank. Neither Cedar Bank nor F.D.I.C. were parties to the Kansas action. The cause was submitted to the court on stipulation and consent to entry of judgment. In that case the Special Administrator recovered judgment against the Oltjens for the proceeds represented by the cashier's checks.

■ Since neither Cedar Bank nor its Receiver, F.D.I.C., were parties to the Kansas Court action the judgment rendered therein would not be res judicata against the interest of Cedar Bank or F. D.I.C. Elrod v. Denning, Okl., 311 P.2d 801.

Also, appellant in her brief states that Lohman instructed Oltjen not to apply the cashier's checks on the notes if the bank examiners were present. To support this argument, appellant cites a portion of the deposition of Oltjen. In response to what he did with the cashier's checks, Oltjen said:

"A. Well, I took them back to Cedar Vale and I was going to apply them onto the notes at the bank. When I arrived back at Cedar Vale the examiners were there, so I thought it would be best not to do it at that time, and I would wait a day or two, and then apply it onto the notes.

"But then I didn't get to.

"Q. This was in accordance with the instructions that Mr. Lohman had given to you?

"A. Yes.

"Q. You didn't apply them when you got back to Cedar Vale?

"A. No.

"Q. Did you ever apply them on the notes?

"A. No.

" * * * "

Although the above evidence might indicate that Lohman told Oltjen not to apply the cashier's checks to the notes of Carter and Simms if the bank examiners were at the Cedar Bank, the stipulation of the parties and other portions of Oltjen's deposi-

tion clearly disclose otherwise. The stipulation discloses that Lohman directed Oltjen to go to Pawhuska, purchase the cashier's checks and apply the proceeds on the notes of Carter and Simms; and that the checks were purchased by Oltjen for the purpose of applying the proceeds on the two notes. Oltjen testified that in his conversation with Lohman, Lohman said, "Well, I'll deposit $8,000.00 in that account (Oltjen's Mobridge account) and you go to Pawhuska and draw two drafts or cashier's checks for $4,000.00 apiece, and apply them on these two notes. Four thousand dollars on each note." Oltjen also testified that when he found the bank examiners at Cedar Bank, he "decided at that time it would not be best to apply the checks on the accounts as Mr. Lohman had instructed." Neither the stipulation nor any other testimony of Oltjen, except that relied upon by appellant set forth above, faintly suggests that Lohman directed Oltjen not to apply the cashier's checks to the two notes if the bank examiners were present. Under the facts presented, we must conclude that it was Oltjen who made the decision not to apply the proceeds of the cashier's checks to the notes because the bank examiners were there and he did not do so because of any directions he had from Lohman.

Appellant's basic contention is that the trial court erred in finding that the cashier's checks became the property of Cedar Bank by virtue of the fact that Oltjen was an officer of the bank. Appellant argues that the evidence clearly shows that Oltjen was acting as Lohman's agent when he obtained the cashier's checks; that Oltjen's agency relationship with Lohman decisively pre-empted his relationship as an officer of Cedar Bank; and that Oltjen's obligations with regard to the method of the application of funds to the loans of Carter and Simms ran exclusively to Lohman and not to the bank.

This Court will not speculate why Oltjen found it necessary to telephone Lohman and tell him that some payment should be made on the notes of Carter and Simms, or why Lohman deposited $8,000.00 in Oltjen's Mobridge bank account to pay for cashier's checks to apply to the notes of Carter and Simms. The fact remains, however, that when Oltjen telephoned Lohman he was acting for and on behalf of Cedar Bank and was seeking some payment on the notes of Carter and Simms. For some reason, not shown in the record, Lohman responded and made arrangements for the purchase of the cashier's checks for the purpose of payment on the two notes.

Assuming, arguendo, that Oltjen may have been acting as an agent for Lohman when he went to Pawhuska and purchased the cashier's checks, this does not necessarily mean that Oltjen could not also act on behalf of Cedar Bank in the same transaction.

3 Am.Jur.2d Agency § 236, states:

"The rule which precludes one from acting as agent for both parties to a transaction is limited in its application to situations where loyalty to one involves a breach of duty to the other, and an agent may be allowed to serve both parties to a transaction if there is no necessary conflict in their interests. There may be, and many times are, transactions in which an agent may, entirely consistent with his duty to his principal, at the same time, and in the same transaction perform a service for a third party."

Although Oltjen may have been acting for Lohman, he was also acting as an agent for and an officer of Cedar Bank. Oltjen's going to Pawhuska and obtaining the cashier's checks for the purpose of applying the proceeds on the notes of Carter and Simms was not inconsistent with his relationship with Cedar Bank nor did Oltjen's relationship with Lohman pre-empt his relationship with Cedar Bank.

Appellant contends that the Uniform Commercial Code requires endorsement and delivery for the negotiation and transfer of the cashier's checks and the checks were neither endorsed nor delivered.

There is no evidence in the case at bar that Lohman directed Oltjen to obtain the cashier's checks naming Carter and Simms as the payees except that found in the pro-

ceedings in the Kansas case heretofore discussed. We have previously held that since neither Cedar Bank nor its Receiver, F.D.I.C. were parties to that action, that action could not be binding on them. The admissible evidence does not disclose that Lohman instructed Oltjen who should be named as payees in the cashier's checks. In fact, Oltjen testified in his deposition that Lohman told him "to draw two drafts or cashier's checks" and apply them on the notes.

 Under the record in this case, the fact that the cashier's checks were made payable to fictitious persons and had never been endorsed by anyone may not inure to the benefit of appellant. Oltjen obtained the checks as an officer of Cedar Bank to apply on the notes owing to Cedar Bank. The fact that they had not been endorsed would not deprive Cedar Bank of the funds they represented any more than Cedar Bank could deny that Oltjen's obtaining the checks was not for its use and benefit. Stated in another way, if Oltjen had absconded with the cashier's checks could Cedar Bank validly argue that it had received no payment on the outstanding notes? We think not. In this connection see Miller v. Viola State Bank, 121 Kan. 193, 246 P. 517.

We have this set of circumstances. Oltjen, as an officer of Cedar Bank, obtained the checks for the purpose of applying them on the outstanding notes payable to Cedar Bank. When Oltjen obtained the checks the only interest or right that Lohman had in the transaction was that the notes of Carter and Simms would be given credit for the amount of the checks. The checks, or the funds they represented, became the assets of Cedar Bank. Oltjen failed to apply the checks to the outstanding notes payable to Cedar Bank and delivered them to Lohman. No consideration was paid by Lohman for the delivery and the checks had not been negotiated. The checks were delivered on or about the same time that Cedar Bank was closed and F.D.I.C. was appointed its Receiver.

In our opinion when an officer of a bank wrongfully delivers cashier's checks rightfully belonging to the bank to an individual without consideration and that individual dies in possession of the non-negotiated checks, the bank is entitled to the checks or the funds represented by them. In this connection see 12 U.S.C.A. § 91, relating to transfer by bank and other acts in contemplation of insolvency. Under that statute a transfer of property or payment by a national bank is void after the commission of an act of insolvency, or in the contemplation thereof, and with the view to prevent the application of its assets as provided by law. First State Bank of Cheyenne v. Barton, 129 Okl. 67, 263 P. 142.

Certiorari granted; decision of Court of Appeals reversed; and judgment of the trial court affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

BERRY, J., concurs in results.

HODGES, J., dissents.